GEORGE FOWLER et al., Respondents, *v.* THE NEW YORK GOLD EXCHANGE BANK, Appellant.

Plaintiffs' contracted to sell $50,000 of gold at 141¼ currency, to be delivered September 24, 1869; defendant was the common agent for dealers in gold, employed in the settlement of their contracts. Plaintiffs did not furnish the gold to fulfill their contract, but defendant furnished and delivered it, receiving the currency agreed to be paid therefor. Plaintiffs thereafter tendered to defendant the amount of gold so delivered and demanded the currency received, which the latter refused to pay. In an action to recover the same, *held*, that while defendant was not bound to perform the contract on behalf of plaintiffs, as they did not furnish the gold; yet, having done so, it was estopped from denying plaintiffs' right to the benefit of the contract; that plaintiffs, by asserting their claim to the money received, adopted and ratified the acts of defendant, and the rights and obligations of the parties were to be determined by the rules governing the relation of principal and agent; that while defendant could not make a profit to itself, yet having acted in good faith it could not be compelled to suffer a loss; that the gold furnished would not be treated as a loan, but defendant was entitled to retain as an indemnity for furnishing it so much of the currency received as the gold was actually worth at the time, and plaintiffs were only entitled to the surplus; also that it was immaterial whether defendant bought the gold for delivery or furnished it from its own funds.

Evidence was given tending to show that the delivery was from gold of dealers deposited in defendant's clearing department, for which it had accounted. Evidence was offered on its part as to the actual cost of the gold, and of the performance by it of the contract, which was objected to and excluded. *Held*, error.

*Fowler* v. *The Gold Exchange Bank* (6 Hun, 186) reversed.

(Argued September 27, 1876; decided October 6, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department affirming a judgment in favor of plaintiffs, entered upon the report of a referee. (Reported below, 6 Hun, 186.)

This action was brought to recover $76,025 currency alleged to have been received by defendant as the purchase-price of $50,000 of gold sold and delivered by it as agent of plaintiffs.

On the 23d of September, 1869, James Brown & Co., who were gold and exchange brokers in the city of New York, for and on behalf of the plaintiffs, agreed to sell and deliver $50,000 in gold coin to Chase, McClure & Co., who acted in the transaction for Chapin, Bowen & Day, who were also engaged in the same business, at one forty-one and a quarter cents in currency for each dollar of the gold. By the terms of the agreement made, the gold was to be delivered and the currency received on the twenty-fourth of September. These three firms of brokers were at the time members of the Gold Exchange of the city of New York, by one of whose rules or regulations the contracts of its members for the sale of gold were to be settled or cleared by the defendant; and to enable it to do that, notes were delivered by the vendors and vendees respectively, addressed to the cashier of the defendant, by which he was informed that the vendors would settle, through the clearing department of the bank, on a specified day, the amount of gold agreed to be sold, and the vendees, in like form, informed him of the currency they were to pay or deliver as the price of the gold. On each day in which the members had settlements or exchanges of this nature to be made through the intervention of the defendant, an account of all of them was also to be delivered to the defendant before half-past twelve o'clock in the day, and the amount of gold or currency, as the case might require, necessary to balance all the transactions mentioned in the account, was also to be paid or delivered with it to the officers of the defendant. The day on which the contract was to be, by its terms, performed proved to be one of uncommon excitement among gold dealers and very great and rapid fluctuations in prices, so much so that it has since been known and designated in that business as "Black Friday." The president of the defendant requested its customers to consummate and settle their sales and purchases between themselves, without the interposition of the defendant. James Brown & Co., the vendors of the gold, on behalf of the plaintiffs, were informed of this request, and they

neither delivered the notice received by them from Chase, McClure & Co. to the cashier of the defendant, nor the general statement or account of their transactions in gold, which were to be cleared and settled on that day, nor did they pay in or deliver to defendant the gold required to perform the contract; but Chapin, Bowen & Day received the notice which James Brown & Co. had delivered when the agreement was made, and delivered it to the cashier of the defendant, with an account of their transactions and the balance due which was required to clear and settle them. The defendant in this way received the price of the gold, to wit, $70,625, in currency, from Chapin, Bowen & Day; and, without any further authority from Brown & Co. than that contained in their notice given to Chase, McClure & Co., delivered the $50,000 in gold.

The evidence showed that James Brown & Co. soon after applied to Chase, McClure & Co. for a performance of the agreement, and then ascertained that Brown & Co.'s notice to the cashier of the defendant had passed into the hands of Chapin, Bowen & Day, who had delivered it to the bank with the currency required, and had received the gold. James Brown & Co. thereupon applied to the defendant for the currency it had received upon their contract, as the contract-price of the gold, and offered to deliver to it the $50,000 in gold. On the 29th September, 1869, defendant's affairs passed into the hands of a receiver; and, in reply to the application, Brown & Co. were informed that, for this reason, nothing could be done. Plaintiffs, as the principals and assignees of James Brown & Co., on the 30th of December, 1869, made a formal tender of the gold, and demanded the currency paid the defendant. That not being complied with, this action was brought for the recovery of the amount, on the theory that the advancement of the gold was substantially a loan of it by the defendant to James Brown & Co., for the plaintiffs, and that view was taken of the transaction by the referee.

The evidence tended to show, and the referee found, that the gold so supplied and delivered by defendant "was taken-

and obtained by it from the general fund of the gold coin received by it from the different dealers in the said clearing department of its business, and paid into the said defendant, as such clearing-house, under and pursuant to the said clearing rules and regulations."

Upon the trial, defendant's president, as a witness on its behalf, after testifying upon this subject, and that the bank did not own any gold, was asked various questions as to the cost to the bank of the gold delivered by it, and the cost of the performance of the contract. These were objected to, and excluded under exception.

Further facts appear in the opinion.

*S. P. Nash* for the appellant. Defendant was entitled to have made good any depreciation in the value of the gold advanced by it. (*Porter* v. *Rose*, 12 J. R., 290; *Coonley* v. *Anderson*, 1 Hill, 519; *Dunham* v. *Mann*, 4 Seld., 508; *Kinne* v. *Ford*, 43 N. Y., 587; *Peabody* v. *Speyers*, 56 id., 230; *Cornell* v. *Moulton*, 3 Den., 12; *Thompson* v. *Ketchum*, 8 J. R., 189; *Herrick* v. *Bennett*, id., 291; *Howland* v. *Willett*, 3 Sandf., 607; *Graves* v. *Porter*, 11 Barb., 592; *Peck* v. *Armstrong*, 38 id., 215; *Marine Nat. Bank* v. *Nat. City Bank*, 59 N. Y., 67; *Rawson* v. *Holland*, id. 611.) The offer of September twenty-ninth to replace the gold was too late. (*Jones* v. *Fowler*, 1 Swe., 5; 2 Parsons on Con., 661, 662; *Hedges* v. *H. R. R. R. Co.*, 49 N. Y., 223; *Hape* v. *Lawrence*, 50 Barb., 258.) The transaction was not in any sense a bailment. (Story on Bail., §§ 47, 283; Jones on Bail., 64; 2 Kent's Com., 573; *Foster* v. *Pettibone*, 3 Seld., 433; *Norton* v. *Woodruff*, 2 N. Y., 153; *S. A. Bank* v. *Randall*, L. R., 3 P. C., 101; *Cooke* v. *Davis*, 53 N. Y., 318.)

*F. F. Marbury* for the respondents. All that plaintiffs were obliged to return defendant was an equal amount of the gold without reference to any fluctuations in price or market value. (*Dykes* v. *Allen*, 7 Hill, 498; *Dry Dock Bank* v. *Am. L. Ins. and T. Co.*, 3 N. Y., 355.)

ALLEN, J.   The defendant in this and similar transactions was but the common agent of the dealers in gold by whom it was employed in the settlement of their contracts by effecting an exchange of gold for currency between the parties.   As the agent of the seller of the gold, it received from him the gold sold and delivered it to the buyer for whom it had received it, receiving in turn from him the currency and paying it to the seller for whom it was received.   Notwithstanding the multifarious transactions of each day and the number of individuals and firms concerned, the result of all the transactions consummated through the instrumentality of the defendant was the making this exchange of commodities between individual dealers.   The regulations of the defendant and of the gold exchange in evidence, and the forms and machinery adopted, had for their only object and result the accomplishment of this exchange between buyer and seller; and notwithstanding the complexity of the dealings and accounts between the many dealers and the combinations and complications necessarily growing out of the daily transactions when brought together, the process was a very simple one for the settlement of separate and distinct contracts, as if but a single contract was to be settled.   As between the several dealers and the defendant, each contract was an individual transaction, in respect to which the bank was the agent of and responsible to each of the parties to it, independent of and distinct from every other transaction.   The bank was not and could not be a dealer in gold for its own account and for its own profit in any transaction in which it represented other parties.   The plaintiffs are compelled to rely upon the fact that the defendant, in delivering the gold to the purchasers and receiving from them the pay therefor, acted solely as their agent in carrying out their contract theretofore made and solvable on that day.   Hence, they have averred the agency and that the acts done by the defendant were done as their agent, and the facts were so found by the referee.   If the defendant was not and did not in fact act as the agent of the plaintiffs, the latter have no claim upon it, for there was no

other relation existing between them upon which the plaintiffs could predicate any claim to the fruit of its dealings. It is true that the plaintiffs, not having furnished the gold for delivery, or complied with other regulations of the defendant, the latter was not bound to carry out the contract in their behalf; but, consenting to do so, it waived the conditions with which the plaintiffs had failed to comply and is estopped now from asserting them or from denying the right of the plaintiffs to the benefit of the contract. Whether the plaintiffs, notwithstanding their order and direction to the defendant to deliver the gold, were bound to adopt the delivery of gold not furnished by them, need not be determined. They have, by asserting their claim to the money received for the gold, adopted and ratified the acts of the defendant, and in so doing have adopted all the means and instrumentalities resorted to by the defendant and all acts done by it in the performance of the contract in their behalf. They could not adopt a part of the acts of the defendant without adopting all. A ratification of the delivery is a confirmation of all that was done by the agent in making such delivery, or providing the gold for delivery. (*Farmers' Loan and Trust Company* v. *Walworth*, 1 Comst., 433; *Crans* v. *Hunter*, 28 N. Y., 389; *Corning* v. *Southland*, 3 Hill, 552.) The relation of the parties as principal and agent in the transaction being conceded, the rights and obligations of the parties must be determined by the rules of law applicable to and governing that relation. The court, in the absence of evidence authorizing it, cannot impose upon them the duties and liabilities growing out of any other relation, as, for instance, that between buyer and seller, or borrower and lender. The parties, by their own conventional arrangement, have determined what relation should exist between them, and neither party, without the consent of the other, can change that relation so as to vary their legal rights; nor can the courts permit either party, without the assent of the other, to occupy a different relation, or to assume a position inconsistent with the relation of principal and agent. The defendant could not, at its

volition, elect to regard the gold which it had delivered, as the agent of the plaintiffs, as either sold or loaned to the latter; neither can the plaintiffs, in adopting the delivery, elect to regard the gold thus delivered as either sold or loaned to them at their option. There is the same reason for holding that the gold was first sold to the plaintiffs at the market-price and then delivered as their gold, as for holding that it was loaned and then delivered. Individuals under contract to deliver gold, may either buy or borrow the same for delivery, and when resorting to either process their contracts will be judged with respect to the laws applicable to them. But it was a mistake to single out one of several contracts which might have been made between parties acting *sui juris* and hold the parties, without their assent to such contract, and apply to it the usages and customs which might be applied to contracts regularly made. It is assumed by the learned judge delivering the opinion of the court below that the defendant delivered its own gold, and that, having done so, it must be treated as a loan of the gold to the plaintiffs. But no good reason is asserted for calling it a loan rather than a sale. If a loan, it would not have been necessarily a naked loan, subject only to the usual conditions which attach to loans in the absence of special agreements; but the parties might, had they met and agreed for a loan, have provided for the compensation, the security for its return, the time and manner of its return and the consequences of a rise or fall in the price, all of which are not infrequently the subjects of contract and special agreement. The same learned judge concedes that a difference would exist in favor of the defendant if the gold had been purchased by it, or procured from some other source by which it was subjected to expense on account of the transaction and its conduct as agent for the plaintiffs; and says that upon the ratification of an act of that nature the principal would probably become bound to protect and fully reimburse the agent. But the agency being conceded, the agent is alike entitled to indemnity whether the gold is supplied from one source or another. Any loss result-

ing from the transaction could no more be made to fall upon the agent in the one case than in the other. The rule is too well settled to be now questioned, that an agent cannot be permitted to make a profit to himself in his dealings in behalf of his principal, and, acting in good faith, will not be compelled to suffer loss. (Story on Agency, §§ 207, 214, 339.) The case is a very plain one. If the defendant furnished gold of its own for the delivery it was only entitled to claim of the plaintiffs so much of the currency received for it as it was actually worth at the time, and so much of the money it might have retained as an indemnity for furnishing it. This money it might have used at once to replace the gold and was entitled to it for that purpose. It could not have put the currency in its safe, and upon a rise in the price of gold demanded of the plaintiffs the increased value, and thus made a profit to itself. Neither could the plaintiffs, upon a decline in the price of gold, claim from the defendant the currency received by it, and cancel their obligations by the delivery of gold bearing a less price in market than at the time of the delivery, and thus inflict a loss upon the agent acting in good faith and in their interest. Had the defendant bought the gold, it would only have been entitled to demand its actual cost; and any profit in the purchase would have been for the benefit of the principal. This principle of indemnity to agents was applied by this court in *Cameron* v. *Durkheim* (55 N. Y., 425), in which brokers had made a settlement of a contract for the sale and delivery of gold by agreeing upon and paying a difference between the contract-price and the market-value of the commodity; and it was expressly held that if the settlement was made in good faith and a proper exercise of the power conferred, they should be protected. Here no question is made as to the good faith of the agent. Its acts are ratified by bringing this action. (See also *Powell* v. *Trustees of Newburgh*, 19 J. R., 284.) An agent is entitled to be indemnified against all damages and losses which are incurred by him and all cost to which he may be subjected in the course of his agency without fault on his part.

Whatever may be the form of the transaction, the law yields full indemnity to the agent as against the principal. (*Ramsay* v. *Gardner*, 11 J. R., 439 ; *Exall* v. *Patridge*, 8 T. R., 308 ; *Child* v. *Morley*, id., 610 ; *D'Arcy* v. *Lyle*, 5 Binney, 441 ; *Greene* v. *Goddard*, 9 Metc., 212.) It is not claimed that gold is to be distinguished in this transaction from any other commodity or article of commerce. It was treated by the parties as an article of merchandise, the subject of purchase and sale, and not as current coin, a part of the currency of the land, and this practice and contracts based upon it are recognized as lawful by the courts and by the government. (*Peabody* v. *Speyers*, 56 N. Y., 230 ; *Cooke* v. *Davis*, 53 id., 318.) If the delivery had been of wheat instead of gold, the defendant representing the plaintiffs as their agent in making the delivery, furnishing the wheat for them, they having failed to supply it, so much of the currency as was received in payment as would at the time of delivery have indemnified the defendant, would have belonged to it, and the plaintiffs would only have been entitled to receive the surplus as their profit. The cost to the defendant would have been the same whether it had furnished the wheat, which was worth to it at the time the market-price and no more and no less, or had bought the wheat, paying for it the market-price, and delivered it upon the plaintiff's contract. Whether the wheat was bought to meet the emergency or had been bought before, without reference to the plaintiff's necessities, would make no difference in the legal rights or equities of the parties. It would have made no difference whether the defendant took the wheat from its own granary or procured it from other sources. The benefit to the plaintiffs and actual contribution and loss of the defendant would be the same.

It was assumed by the Supreme Court that the gold delivered was the property of the defendant, and taken from its coffers ; but that is not conclusively proved. There was room for the jury to find that the delivery was made from the gold of dealers, deposited in the clearing department of the bank for delivery upon contracts in the customary method, and that

the defendant was liable to account and had accounted for it, and in that view the question was material as to what was the actual cost to the defendant of the gold delivered, and, in another form, what the cost of the performance of the contract was to the defendant, and should have been answered.   It was error to. exclude the evidence, as upon the whole case a fair case was made for the jury, had it been material, as to the source from which the gold came ; so as upon any theory, to raise a proper question as to the character and extent of the indemnity to which the defendant was entitled.

But, in my view of the case, the error of the court below was radical in making the rights and obligations of the parties to depend upon the rules of law applicable to borrower and lender of articles to be returned in kind, rather than to principal and agent, in which the latter is entitled to indemnity irrespective of the form of the transaction.   There is no question before us as to the sufficiency of the pleadings, and none was made upon the trial that the evidence excluded was incompetent under the pleadings.

The fact that the defendant suggested to its dealers that they should, under the peculiar circumstances of that day, known in the traditions of Wall street as "Black Friday," settle their contracts between themselves and not through the agency of the bank, is wholly immaterial.   The contract was to be performed at and through the instrumentality of the bank, and the purchaser did not assent to a settlement elsewhere, but demanded a performance at the bank and by the defendant as the common agent of both parties.   The defendant did not tender or deliver the gold elsewhere to the purchaser, but adopts the performance by the defendant, and, for aught we know, they may have sold the gold which they had for delivery under the contract, in the earlier hours of the day, at the almost fabulous prices then ruling, and thus profited by making default in their contract actually performed on their behalf by the defendant.

Neither is there any question respecting the tender or its sufficiency, or the waiver of any rights by the defendant

by not asserting its legal rights as now claimed, at the time of the tender. It was not a case for a tender and the plaintiffs were not entitled to demand of the defendant the whole amount received for the gold delivered. They were only entitled to the surplus after deducting the amount to which the defendant was entitled by way of indemnity. In other words, they were entitled to an accounting by their agent and to a payment of any balance that should be due them upon the transaction. Taking the price of gold as it appears by the record to have been at the hour of the performance of this contract, the gold was furnished at a cost of about 135, which would entitle the plaintiffs to something over six per cent upon $50,000 delivered; and if they recover that sum they will recover all that they would have made by performing the contract in person and with their own gold; and, unless it appears that in some legitimate way the defendant was compelled to pay more for the gold delivered, the agent will be fully indemnified and equal and exact justice done between the parties, in strict accordance with the well-established rules of law governing transactions between principal and agent. But if the rule adopted by the court below is adhered to, the agent, without fault on its part, will be made to sustain a loss of some fifteen per cent upon the $50,000, which it could not have avoided except by refusing to perform the contract in behalf of the principals and leaving them to abide by the consequences of their own default, and the plaintiff's will have made several thousand dollars by leaving their agent to stand in the breach and take the consequences of their default. This would be grossly unjust, as well as a perversion of legal principles. A fluctuation in the price of gold in the other direction might, by the application of the same rule, have compelled the plaintiffs to deliver gold worth and costing much more than the price at which it was sold by them, thus imposing upon them a loss on a contract upon which there was an actual profit and giving to the agent a profit to which it was not entitled.

The judgment must be reversed and a new trial granted.

All concur; CHURCH, Ch. J., in result.

Judgment reversed.