CRANS and VAN DUZER v. HUNTER and others.

A debtor can not have the benefit of a compromise and release effected by his agent, with his creditors, without adopting all the representations made by the agent, to the creditors, in negotiating the same.

The release will be no better in his hands than if he had personally obtained it and made the same representations to the creditors, to procure it, that his agent made to them.

The compromise of a doubtful claim is a good consideration for a promise to pay money; and when an action is brought upon such a promise, it is no answer to show that the claim was not a valid one.

Where it is not entirely certain that creditors can not avoid a compromise, and release of their debtors, for the misrepresentations which constituted an inducement for them to execute it, if the debtors, on a demand being made upon them for the unpaid portion of their debt, compromise the claim by giving their notes for the amount, the notes are valid, and the makers become legally liable to pay the sum for which they were given.

Such notes may be retained, and enforced, by the holders, without returning, or offering to return, the goods or money received by them under the former compromise.

THIS action was brought in the Supreme Court to compel the defendants to deliver up to the plaintiffs for cancellation two negotiable promissory notes for $100 each, which the plaintiffs had executed and delivered to the defendants, and which had not become due ; and to recover back the money the plaintiffs had paid to the defendants in taking up two other promissory notes for $100 each, which had become due.

The action was tried before a referee. The following facts were indisputably established by the pleadings and evidence, to wit: The plaintiff Crans was indebted to the defendants for merchandise, on the 25th day of July, 1856, in the sum of $980.34. On that day Crans effected a compromise with the defendants and most of his creditors, by conveying what real property he had in this state, (his wife joining in the conveyance,) and also what personal property he had in this state, to one Hubbard, in trust for the creditors who were parties to the compromise. The defendants, and such other

creditors as were parties to the compromise, in consideration of the execution of the trust deed by Crans and his wife to Hubbard, executed a release under seal to Crans, and delivered the same to him, by which they released all claims and demands they had against him. The property so conveyed to Hubbard only paid the defendants, and other creditors of Crans similarly situated, about fifty cents on a dollar of their demands.

At the time the compromise was effected, the defendants knew Crans owned a valuable farm and some personal property situated in Pennsylvania. Hubbard acted for Crans and one of the firms whom Crans owed, and who were parties to the compromise, in effecting the compromise. He represented to the defendants that the Pennsylvania property was incumbered for all and more than it was worth, when it was not incumbered for as much as it was worth. He also stated to the defendants that it would be best for Crans' creditors to make the compromise; and upon these reprsentations of Hubbard the defendants executed the release, and became parties to the compromise.

About the 1st of March, 1858, Crans went into the defendants' store in the city of New York, when the defendant Buckley said to him : "We have never given up the old matter yet; [the debt released.] We know we signed the release, but we never calculated to give that matter up; we calculated to have something more out of it; and now what are you going to do about it ?" Crans replied that he supposed it all settled. Buckley then accused Crans of lying to the defendants when the old debt was contracted, by representing that his property was worth double what it was in fact worth; or said that Crans' property was not worth "over one half he represented it to be." Buckley then figured upon the old account and made out that over $500 remained unpaid thereon. And Crans and the plaintiff Van Duzer, on the 4th day of March, 1858, in consideration of the premises and to pay the balance of such account, executed and

delivered to the defendants four negotiable promissory notes for the payment of $100 each. Two of which had become due and were paid by the plaintiffs before this action was commenced. Two of such notes had not become due, and were owned and held by the defendants when this action was commenced, and were in the words and figures following, viz:

"*Wavery, March* 4, 1858.

$100. Twelve months after date, we promise to pay to the order of Hunter, Buckley & Co., one hundred dollars at Waverly Bank, Waverly, N. Y., value received.

(Signed)          CRANS & VAN DUZER."

"*Waverly, March* 4, 1858.

$100. Sixteen months after date, we promise to pay to the order of Hunter, Buckley & Co., one hundred dollars at Waverly Bank, Waverly, N. Y., value received.

(Signed)          CRANS & VAN DUZER."

The plaintiffs demanded these notes, and the money they paid in taking up the other two notes, of the defendants prior to the commencement of the action. The defendants refused to comply with the demand. The plaintiffs obtained an injunction restraining the defendants from negotiating the two notes which the plaintiffs had not paid.

The referee found the following conclusions of fact and law, viz: The release was procured from the defendants under the following circumstances. One John W. Hubbard, acting on behalf of Mr. Brown, another creditor of Crans, visited him at Waverly; after talking over Crans' affairs with him, Hubbard called on the defendants, with the knowledge and consent of, and by an arrangement with, the plaintiff Crans, to induce his creditors to execute the said compromise. On exhibiting the schedule of property proposed to be transferred, all of which was in New York, the defendants Buckley and Hunter inquired about the Pennsylvania farm, which Crans had represented to them before that he owned; Hubbard replied that that farm was incumbered

for more than it was worth; and that the property on the schedule was all he had, except his Pennsylvania property. Crans had not authorized him to make this representation, by any thing he had said. Hubbard himself acted in good good faith. The representations of Hubbard constituted an inducement to the defendants to sign the release.

At the time the release was executed, Crans owned half of a farm of 156 acres in Bradford county, Pennsylvania, his interest in which was worth $6875, which was incumbered by three judgments of $1000, $1500 and $1672. The last mentioned judgment was $5000 on the record, but it had been paid down to $1672. But this fact was not known to Hubbard or the defendants. At the same time Crans owned half of the personal property on the farm, which half was worth $675. He also then owned half of another lot, which half interest was worth $675; he also then owned half of another lot, which half interest was worth $125; and he also owned a wood lot worth $100.

The defendants heard, some months before the four notes were given, that this Pennsylvania farm was in fact worth some $2500 more than the incumbrances upon it. They had received under the trust deed some $450, and had never returned or offered to return what they so received, and never gave any notice that they should treat the release as void for fraud in obtaining it. The four notes for $100 each were voluntarily given, and not obtained by duress. But there was no legal consideration for either of them. Two of them were paid at maturity and two were still held by the defendants.

The referee also found that the plaintiffs were not entitled to recover back the money they paid to the defendants when they took up two of the $100 notes. But that the plaintiffs were entitled to a surrender of the other two $100 notes, and were also entitled to recover costs.

The defendants' counsel excepted to the findings of the referee so far as they were against the defendants.

Judgment was entered in favor of the plaintiffs upon the decision of the referee, and in conformity therewith.

The judgment was affirmed at a general term of the Supreme Court in the first district. The defendants appealed therefrom to this court.

The case was submitted upon printed briefs.

. *Sidney S. Harris,* for the plaintiffs.

*E. More,* for the defendants.

BALCOM, J.   Crans could not have the benefits of the compromise and release without adopting all the representations that Hubbard made to the defendants in the negotiations for the same. The release was no better in his hands than if he had personally obtained it and made the same representations to the defendants to procure it that Hubbard made to them. (*Bennett* v. *Judson,* 21 N. Y. Rep. 238; 23 Wend. 260; 1 Hill, 317.)

The referee found that Hubbard represented to the defendants that the farm in Pennsylvania, of which Crans owned one half, "was incumbered for more than it was worth," and that such representation "constituted an inducement to the defendants to sign the release." He also found that only $1672 was due upon the $5000 judgment, which was one of the liens on the farm; and his figures show that Crans' half of the farm was worth $2703 more than all the incumbrances on it at the time the compromise was effected; and that the value of the other real and personal property Crans then owned in Pensylvania was $880. Crans retained all this property; and the defendants then supposed what property he had in Pennsylvania was incumbered for more than it was worth. He did not deal fairly with the defendants. I say this, because the misrepresentations which Hubbard made to the defendants are to be deemed his misrepresentations. The defendants only obtained about half of their debt by the

compromise. Over $400 of the same remained unpaid. The defendants therefore had at least a doubtful claim against Crans for that sum, when he and Van Duzer gave them the four promissory notes in question, for $100 each. The referee therefore erred in holding that "there was no legal consideration" for either of such notes. It is well settled that the compromise of a doubtful claim is a good consideration for a promise to pay money; and that when an action is brought upon such a promise, it is no answer to show that the claim was not a valid one. (*Stewart* v. *Ahrenfeldt*, 4 Denio, 189; *Seaman* v. *Seaman*, 12 Wend. 381; *Russell* v. *Cook*, 3 Hill, 504.)

It is not entirely certain that the defendants could not have avoided the compromise and release for the misrepresentations that constituted an inducement for them to become parties thereto, and recover their debt of Crans. Hence when Crans compromised the defendants' claim for the unpaid portion of such debt, and he and Van Duzer gave the notes in dispute therefor, they became legally liable for that portion of the debt included in the notes. (See *Stafford* v. *Bacon*, 1 Hill, 532.) The notes, therefore, were valid.

The appellants' counsel claims that the notes were valid, for the alleged reason that a promise by a debtor, after the execution of a voluntary release under seal by the creditor, at the debtor's request, to pay the balance of the debt, is founded on a sufficient consideration and is binding. He has submitted a very interesting brief in support of this proposition. There is considerable authority that sustains it. (See *Willing* v. *Peters*, 12 Serg. & Rawle, 177; Comyn on Con. 4th Am. ed. p. 20; *Downsend* v. *Hunt*, 3 Croke's Rep. 408; *Tuck* v. *Tooke*, 12 Moore, 438; 4 Man. & Ry. 393.) The authorities in this state and Massachusetts seem to be the other way, (see *Stafford* v. *Bacon*, 1 Hill, 532; S. C., 2 id. 353,) where it is stated that the opinion of NELSON Ch. J., to the contrary, published in 25 Wendell, page 384, was delivered to the reporter by mistake. (See also *Valen-*

*tine* v. *Foster*, 1 Metcalf, 520.)    But the view I have taken of the case renders it unnecessary to express any opinion upon this question.  (See *Goulding* v. *Davidson*, 26 N. Y. Rep. 604.)

The decision of the referee can not be sustained for any insufficiency in the answer.    The complaint contains the allegation that the release was given by the defendants "with full knowledge of all the material facts affecting their rights." They denied this, and had the right to controvert the same. Besides, the parties litigated the case upon the merits, and it is too late for the plaintiffs to object to the sufficiency of the answer.    (1 Kernan, 237; 3 id. 127; 18 N.Y. Rep. 585; 20 id. 355; *Dauchy* v. *Tyler*, 15 How. Rep. 399.)

There is nothing in the point made by the plaintiff's counsel that the defendants could not retain and enforce the notes without returning, or offering to return, the goods or money received by them under the compromise.    Crans waived the right to require this, if he ever possessed it, when he settled with the defendants, and delivered to them the notes in question.    He agreed, when he gave the notes, that they might retain whatever they had received or would receive under the compromise, and that he and Van Duzer would pay them $400 besides, according to the tenor and effect of the notes they gave therefor.

For the foregoing reasons I am of the opinion the judgment of the Supreme Court should be reversed, and a new trial granted, costs to abide the event.

DENIO, Ch. J. also delivered an opinion for reversal.

Judgment reversed, and a new trial ordered.