JULIUS P. WAHL et al., Respondents, v. STEPHEN O. BARNUM et al., Appellants, EDGAR J. CHATFIELD, Respondent.

An order of General Term denying a motion for a new trial, made as authorized by the Code of Civil Procedure (§ 1001), in a case where an interlocutory judgment has been entered on decision of the court or report of a referee, rendered upon trial of an issue of fact, is reviewable here.

On such a motion, however, the General Term may not review questions of fact, but simply those of law; and only questions of law presented by the exceptions may be considered in this court.

In the absence of fraud or duress, a settlement of a disputed claim preferred in good faith by a promisee against a promisor is a legal consideration for the promise; and the fact that the promisor had a legal defense to the claim settled is no defense to an action on the new promise.

*Ryan* v. *Ward* (48 N. Y. 204) distinguished.

In the absence of duress, fraud or mistake, an account stated by partners between themselves will not be opened and investigated in an action for an accounting.

A contract forming a partnership to be continued beyond one year is, within the provision of the statute of frauds, declaring every agreement which by its terms is not to be performed in one year from the making

thereof to be void unless in writing; and a partnership so formed is a partnership at will. (POTTER, J., dissenting.)

*Smith* v. *Tarlton* (2 Barb. Ch. 336); *National Bank* v. *Van Derwerker* (74 N. Y. 234, 239) distinguished and limited.

An oral contract, invalid by the statute of frauds, because by its terms it is not to be performed within one year from the making thereof, is not validated by part performance.

Where findings of fact of a court or referee are so inconsistent that they cannot be reconciled, those which are more favorable to the appellant will control on appeal.

An oral agreement was entered into between the firm of S. O. B. & Son, composed of the defendants S. O. B. and T. D. B., that said firm should discontinue business and be succeeded by another composed of T. D. B., defendant C. and the plaintiffs, the copartnership to continue for three years from June 24, 1879, the copartners to share equally in the profits and losses. The new firm began business, and in January, 1880, an inventory was taken which showed that the profits of the business exceeded $60,000. Shortly after the inventory, the members of the old firm asserted that they owned the business and its profits as no partnership existed, the agreement not having been reduced to writing, and as the new members had not paid in their share of capital. It was thereupon agreed that plaintiffs and C. should each be credited with $3,000, the B.s to have the remainder of the assets, and that thereafter the business should be continued on the terms of the copartnership agreement, the partnership to date from January 10, 1880. It was continued until dissolved in March, 1882. In an action to set aside the compromise agreement for lack of consideration and for an accounting, etc., *held* (POTTER, J., dissenting), that either party had a right to terminate the copartnership at will; that the new agreement was supported by a valid consideration, and in the absence of any evidence of fraud or bad faith on the part of the B.'s was valid and binding.

(Argued June 6, 1889; decided October 8, 1889.)

APPEAL (pursuant to section 190, subdivision 2, Code of Civil Procedure) from an order of the General Term of the Superior Court of Buffalo, made July 12, 1886, which denied a motion for a new trial (made pursuant to section 1001), and affirmed an interlocutory judgment in favor of plaintiffs, entered upon a decision of the court on trial without a jury.

For many years prior to June, 1879, the defendants Stephen O. Barnum and Theodore D. Barnum were partners and merchants at Buffalo, N. Y., under the firm name of S. O. Barnum & Son. Stephen O. Barnum owned a three-fourths

and Theodore D. Barnum a one-fourth interest in the firm. The respondents had for many years been employed by the firm. On June 4, 1879, the firm's place of business, and a large part of its merchandise, were destroyed by fire. In that month the parties to this action orally agreed that S. O. Barnum & Son should discontinue business and be succeeded by S. O. Barnum's Son & Co., which firm was to be composed of Theodore D. Barnum, Julius P. Wahl, John Ansteth, John S. Snaith, the plaintiffs, and defendant Edward J. Chatfield, and have a capital of $60,000, of which Theodore D. Barnum was to contribute the unburned merchandise of the old firm, valued at $40,000, and every one of the other partners $5,000 in cash; and that the firm should continue in business for three years from June 24, 1879. The time when Wahl, Ansteth, Snaith and Chatfield should pay in their shares of capital was not agreed upon, but it was agreed that every one of the partners should pay the firm interest at the rate of seven per cent per annum on the amount due from him to the firm for capital, and should receive interest at the same rate on the capital furnished. It was also agreed that each partner should have one-fifth of the profits and bear one-fifth of the losses, the five partners having equal interests. Barnum was to have the right to withdraw from the firm $2,800 in each year, and the other partners $1,200 each. It was agreed that the contract should be reduced to writing, and afterwards Theodore D. Barnum presented a written contract for the signatures of the five parties, which the plaintiffs refused to execute on the ground that it did not express the oral contract as agreed upon. Barnum turned over the unburned merchandise to the new firm and it began business and continued until March 23, 1882, when it was dissolved by mutual consent. In January, 1880, Ansteth paid toward his share of the capital $500; in April, 1880, $500. In April, 1880, Wahl paid towards his share of the capital $1,000, and about that time Snaith paid in $5,000, his share of the capital. No other sums were paid in as capital.

In January, 1880, an inventory of the assets and business of the firm was taken, as of the tenth of that month, by which it appeared that the profits of the firm then exceeded $60,000. Shortly after the inventory was taken the Barnums asserted that no articles of partnership having been signed, and the respondents not having paid in their share of capital, no partnership existed, and that they, the Barnums, owned the business and its profits. After considerable negotiation, it was, about March 8, 1880, orally agreed between the parties to this action that the plaintiffs and Chatfield should be credited with $3,000 on the books of the firm, the Barnums should have the remainder of the assets, and that thereafter the business should be conducted by S. O. Barnum's Son & Co., on the terms above stated, the copartnership to date from January 10, 1880, The business was continued from this date until the dissolution.

In November, 1882, this action was begun to set aside the oral compromise of March 8, 1880, for the fraud and duress of the Barnums and for the lack of consideration, and for an accounting of the affairs of the firm from June 24, 1879, until March 23, 1882, the date of dissolution. Upon the trial the court held that the oral compromise "was without any good consideration and was null and void," and that an accounting should be had before a referee of the business of the firm from June 24, 1879, to the date of its dissolution. An interlocutory judgment was entered in accordance with the decision, which reserved the question of costs until the final judgment. After the entry of this judgment, and before the accounting therein ordered was begun, Stephen O. Barnum and Theodore D. Barnum moved, pursuant to section 1001, Code of Civil Procedure, at the General Term, for a new trial on their exceptions, which was denied, with costs, and thereupon they appealed from the order entered on the decision of their motion.

Further facts appear in the opinion.

*John G. Milburn* for appellants. The compromise of

March, 1880, was untainted by fraud, and, as an adjustment of conflicting claims, is sustained by a sufficient consideration.. (*Dunham* v. *Griswold*, 100 N. Y. 224; *Feeter* v. *Weber*, 78 id. 334; *Wehrum* v. *Kuhn*, 61 id. 623; *Crans* v. *Hunter*, 28 id. 389; *White* v. *Hoyt*, 73 id. 505, 514, 515; *Hemmingway* v. *Staurell*, 106 U. S. 399; *Union Bank* v. *Geary*, 5 Peters, 99; Pollock's Principles of Contracts, 166; Wharton on Contracts, § 533; *Miles* v. *Estate Company*, L. R., 32 Ch. Div. 266; *Callister* v. *Bishchoffsheim*, L. R., 5 Q. B. 449; *Moore* v. *Townsend*, 102 N. Y. 381; *Bullock* v. *Bemis*, 20 N. Y. S. R. 836; *Oberlander* v. *Speiss*, 45 N. Y. 175, 179; *Armstrong* v. *Dubois*, 90 id. 95.) Provisional agreements which are to be reduced to writing are not completed contracts until they are so reduced and signed. (Whart. on Contracts, § 5; Pollock on Contracts [4th ed.] 41, 42; *Brown* v. *R. R. Co.*, 44 N. Y. 79; *Ridgway* v. *Wharton*, 6 H. L. Cases, 238, 264, 268, 305, 306.) The facts in connection with the various transactions under review were all equally known to the parties; the plaintiffs, in making the compromise in question, acted under the advice of counsel, and were advised as to their rights, and it should be sustained. (*Miles* v. *E. Co.*, L. R., 32 Ch. Div. 266.) Whatever may have been the relations of the parties prior to the 8th day of March, 1880, and whether before then they were partners or not the agreement made on that day was valid as a reconstruction of their relations, and, as such, is founded upon a sufficient consideration. (*Lattimore* v. *Harsen*, 14 Johns. 330; *Stewart* v. *Keteltas*, 36 N. Y. 388; *Monroe* v. *Perkins*, 9 Peck, 298; *Cooke* v. *Murphy*, 70 Ill. 96; *Holmes* v. *Doane*, 9 Cush. 135; *Morse* v. *Locomotive Works*, 14 Mich. 266; *Coyner* v. *Lynde*, 10 Ind. 282; *Lawrence* v. *Davy*, 28 Vt. 264; *Bishop* v. *Busse*, 69 Ill. 403.) The contract of partnership, as found by the trial court, was void under the statute of frauds, as it was not to be performed within a year, and, therefore, the agreement, at the time the compromise was made to continue the partnership, in accordance with the terms of the proposed articles of copartnership, was a sufficient consideration in and of itself to sustain the compro-

mise, it having been performed. (2 R. S. 136, § 2, subd. 1; *Oddy* v. *James*, 48 N. Y. 685; *P. Co.* v. *Sickels*, 5 Wall. 580; *Morris* v. *Peckham*, 51 Conn. 128; *Williams* v. *Jones*, 5 B. & C. 108; *Whipple* v. *Parker*, 29 Mich. 369; Bates on Partnership, §§ 208, 209; *Griffin* v. *Rossiter*, L. R., 11 Q. B. 123; Lindley on Partnership [5th Eng. ed.] 571; *McElvoy* v. *Lewis*, 76 N. Y. 373; *Shinner* v. *Dayton*, 19 Johns. 513, 538; *Slemmer's Appeal*, 58 Pa. St. 163; *Solomon* v. *Kirkwood*, 55 Mich. 256.) The compromise is unimpeachable on any ground of duress or undue influence. (*Dunham* v. *Griswold*, 100 N. Y. 224; *Ins. Co.* v. *Meeker*, 85 id. 614; *Bean* v. *Whipple*, 15 N. Y. S. R. 998; *Scudder* v. *Burrows*, 8 id. 605; *Silliman* v. *U. S.*, 101 U. S. 464; *French* v. *Shoemaker*, 14 Wall. 314; *Gould* v. *Cayuga Bank*, 86 N. Y. 75; *Scheffer* v. *Dietz*, 83 id. 300; *Upton* v. *Trebilcock*, 91 U. S. 54; Whart. on Contracts, § 284.)

*Adelbert Moot* for plaintiffs, respondents. The only legitimate charge against the plaintiffs, individually, would have been $5,000 each, and interest thereon from June 23, 1879, at the legal rate, or, at most, at the rate which the firm had been compelled to pay for money to take its place, and there is no dispute but that this was seven per cent. Charging this to plaintiffs, they would still have been entitled, over and above the charge, to about $7,000. (*Cheeseman* v. *Sturges*, 6 Bosw. 520; 9 id. 246.) Mutual promises make an accord, but not a satisfaction, and the party may still recover his original demand. (*Mitchell* v. *Hawley*, 4 Denio, 416; *Markle* v. *Hatfield*, 20 Johns. 459; *Dewey* v. *Derby*, Id. 462.) Part payment, if so accepted, does not discharge whole debt. (*Markle* v. *Hatfield*, 20 Johns. 459; *Deidrick* v. *Leman*, 9 id. 333; *Ryan* v. *Ward*, 48 N. Y. 204; *Bunge* v. *Koop*, Id. 225.) The minds of the parties must meet on every essential proposition or there is no contract, and they stand on their previous contract, express or implied by law. (*Hough* v. *Brown*, 19 N. Y. 111; *Baptist Church* v. *B. F. Ins. Co.*, 28 id. 153. *Booth* v. *Bierce*, 38 id. 463; *Cutts* v. *Guild*, 57 id.

229, 234.)   A mere entry in the copartnership books of the firm, made by reason of false statements of one partner, which does injustice to the other, is not a bar to an honest accounting by that other partner, which shall go behind this false entry and correct it.   (3 Pomeroy's Eq. Jur. 473, § 1421.)   There has been no account stated here, and no settlement.   (*Stryker* v. *Cassidy*, 76 N. Y. 50 ; *Evenson* v. *Syracuse*, 100 id. 579, 584.)   The facts proved do not constitute a good accord and satisfaction.   (1 Smith's L. C. 439 ; *Platt* v. *Walrath*, Lalor's Supplement, 59 ; *Keeler* v. *Salisbury*, 33 N. Y. 653 ; *Bunge* v. *Koop*, 48 id. 225 ; *Ryan* v. *Ward*, Id. 204 ; *Markle* v. *Hatfield*, 20 Johns. 459 ; *Dewey* v. *Derby*, Id. 462 ; *Mitchell* v. *Hawley*, 4 Denio, 416 ; *Diedrich* v. *Leman*, 9 Johns. 333.)   The right to claim that plaintiffs were to put in $5,000 each at once, and should sign copartnership articles, was clearly waived by going on with the business of the firm, as was done, and it was too late for the Barnums to make such a claim as the basis of compromise in February, 1880, for that reason.   (*Azel* v. *Betts*, 2 E. D. Smith, 188 ; *A. B. N. Co.* v. *Edson*, 56 Barb. 84 ; Story on Partnership, §§ 86, 203, 348, 348a ; *Sombey* v. *Bimtin*, 118 Mass. 279.)   To determine whether or not a particular payment is voluntary, regard must be had to the situation of the parties, and to the effect of the decision in the particular case.   (18 Cent. L. J. 190 ; *Scholey* v. *Mumford*, 60 N. Y. 498.)   A compromise induced by lies, acted, actual, or expression of part of the truth, where called upon to speak, will not stand, but a party may retain what he may receive under it and sue for the balance justly his due.   (*Gould* v. *Bank*, 99 N. Y. 333 ; *M. E. Ry. Co.* v. *M.*, 14 Abb. N. C. 226 ; *Almon* v. *Hamilton*, 100 N. Y. 526 ; *Boyd* v. *Foote*, 5 Bosw. 110 ; *Herrick* v. *Ames*, 8 id. 115 ; *A. B. N. Co.* v. *Edson*, 56 Barb. 84 ; *Stryker* v. *Cassidy*, 76 N. Y. 50 ; Story on Partnership [7th ed.] § 206 ; *Talcott* v. *Harris*, 93 N. Y. 567.)   Since the claim clearly lacked *bona fides* in part or *in toto*, in fact or in law, which was put forth by the Barnums, the so-called

compromise falls through. (*Feeter* v. *Weber*, 78 N. Y. 334; Story on Partnership, § 203; *Stewart* v. *Ahrenfeldt*, 4 Denio, 189; *Ormsby* v. *Howe*, 54 Vt. 182.) Since the Barnums parted with nothing not legally the plaintiffs, as a consideration for the so-called agreement, and in making the credit in question plaintiffs only received part of what they were legally entitled to, that entry is no bar to a further credit by this court upon this accounting of the whole sum to which plaintiffs are entitled, and is no bar to the accounting commencing with the commencement of the copartnership. (*Long* v. *Towl*, 42 Mo. 545; *Mitchell* v. *Hawly*, 4 Denio, 416; *Bunge* v. *Koop*, 48 N. Y. 225; *Farnham* v. *O'Brion*, 23 Me. 482; *Haynes* v. *Thorn*, 28 N. H. 38; *Alfrey* v. *R. R. Co.*, 4 Allen 55; *Lang* v. *Johnson*, 24 N. H. 302; *Wilbur* v. *Crane*, 13 Pick. 284; *Sullivan* v. *Collins*, 18 Iowa, 228; *Kidder* v. *Blake*, 45 N. H. 530; *Mulholland* v. *Bartlett*, 74 Ill. 58; *Foster* v. *Metts*, 55 Miss. 77; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Cabot* v. *Haskins*, 3 Pick. 92; *Farnham* v. *Comrs.*, 20 Week. Dig. 502; *Davison* v. *Ford*, 23 W. Va. 617.) There is enough in this case to show that this pretended compromise was executed under duress of property by the plaintiffs. (29 Alb. L. Jour. 436; *Knotts* v. *Preble*, 50 Ill. 226; *Headly* v. *Hackley*, 50 Mich. 43; *Schooley* v. *Mumford*, 60 N. Y. 498; 64 id. 521; 72 id. 578; *Harmon* v. *Bingham*, 12 id. 99; *Stenton* v. *Jerome*, 54 id. 480; *Baldwin* v. *Steamship Co.*, 74 id. 125; *Carew* v. *Rutherford*, 106 Mass. 12; *Shortwell* v. *Horton*, 28 Ves. 373.) The purchase of the goods on three years' time shows that the partnership was to continue three years. (Dixon on Partnership, 24–27.) As there was no final settlement, it was necessary to direct an accounting from the beginning as to all the stocks and assets. (*King* v. *Leighton*, 100 N. Y. 387–389.) Where there is any mistake or omission, or fraud, or undue advantage, by which an accounting is, in truth, vitiated, and the balance incorrectly fixed, a court of equity will not suffer it to be conclusive upon the parties. (Story's Eq. Juris. § 523; *Farnham* v. *Brooks*, 9 Pick. 212; *Banow* v. *Rhinlander*,

1 Johns. Ch. 550 ; *Wheaton* v. *May*, 5 Ves. 26 ; *Baker* v. *Spencer*, 47 N. Y. 562 ; 4 Cranch, 306 ; *King* v. *Leighton*, 100 N. Y. 387.) As there was no settlement of the copartnership affairs between the copartners, and it does not appear how much money was in the bank when the copartnership was dissolved, or how much the Barnums have collected on firm's accounts since dissolution, it is clear that the plaintiffs were entitled to the interlocutory decree. (Story on Partnership [7th ed.] §§ 206, 349.)

*Spencer Clinton* for respondent, Edward J. Chatfield. The claim that the compromise of March 8, 1880, was sustained by a valid consideration is not borne out by the facts or the law. (*Ryan* v. *Ward*, 48 N. Y. 204 ; *Miller* v. *Coates*, 66 id. 609.) The statute of frauds does not affect the question, as the contract was executed at the time of the alleged compromise, and the right of the parties were, at that time, fixed by the partnership agreement. (*Baxter* v. *West*, 1 D. & S. 173 ; *Williams* v. *Williams*, 2 Ch. 294 ; *Burdon* v. *Barkus*, 4 De G., F. & J. 47.)

Follett, Ch. J. The order of the General Term denying the motion for a new trial made under section 1001, Code of Civil Procedure, is reviewable by this court. (*Walker* v. *Spencer*, 86 N. Y. 162 ; *Raynor* v. *Raynor*, 94 id. 248.) But the General Term could not, on such a motion, review questions of fact, and only the questions of law presented by the exceptions can be considered in this court. (*Raynor* v. *Raynor*, 94 N. Y. 248, 252.)

In the absence of fraud or duress, a settlement of a disputed claim preferred in good faith by a promisee against a promisor, is a legal consideration for a promise ; and the fact that the promisor had a legal defense to the claim settled is no defense to an action on the new promise. (*Russell* v. *Cook*, 3 Hill 504 ; *Stewart* v. *Ahrenfeldt*, 4 Denio 189 ; *Crans* v. *Hunter*, 28 N. Y. 389 ; *White* v. *Hoyt*, 73 id. 505, 514, 515 ; *Feeter* v. *Weber*, 78 id. 334 ; *Dunham* v. *Griswold*, 100 id. 224 ; *Callisher* v. *Bischoffsheim*, L. R., 5 Q. B. 449 ; *Ockford*

v. *Barelli*, 25 Law Times 504, 20 Week. Rep. 116; *Miles* v. *New Zealand etc., Co.*, 32 Ch. Div. 266.)

The cases of which *Ryan* v. *Ward* (48 N. Y. 204) is a type, holding that a payment by a debtor of a less sum than the amount which he admits to be justly due and owing by him does not extinguish the debt, though the creditor agrees to receive the less sum in satisfaction, are not in conflict with the rule above stated. There is a great difference between claims unliquidated and disputed, and those which are liquidated and undisputed. A compromise which is sufficient to bar an action on a claim within the first class often being quite insufficient to bar an action on a claim within the second class.

The law regards with favor and seeks to uphold settlements of pending or threatened litigations, but not with favor an attempt to discharge an admitted debt by payment of a part of it. There is no doubt about the rule above stated being firmly established in the law of this state; but the important question is, whether the settlement of March 8, 1880, is within the rule. The transaction was not an executed settlement of one or more disputed claims by which the claimant surrendered or released his demands in consideration of the payment of a sum agreed on or upon the promise of future payment of the sum agreed on. In the absence of duress, fraud or mistake, an account stated by partners between themselves will not be opened and investigated in an action for an accounting (Story on Part., § 206; Lind. on Part. [5th Eng. ed.] 512; *Pilling* v. *Pilling*, 3 De G., J. & Sm. 162; *Coventry* v. *Barclay*, id. 320.) But the controversy settled March 8, 1880, did not relate to the accounts between all or any of the parties to this action, as partners; the question debated and settled was, had Theodore D. Barnum and the respondents been partners since June 24, 1879, and each entitled to a fifth of the profits? They finally agreed, in consideration of being credited with $3,000 each and of the future partnership, that no partnership had previously existed.

This contract is supported by a valid consideration. The partnership which the court found then existed, and

which, by agreement, was to continue for more than a year, rested only on an oral contract, and either partner had a right to terminate it at will.

A contract forming a partnership to be continued beyond one year, is within the section of the statute of frauds which provides that every agreement which by its terms is not to be performed in one year from the making thereof, is void unless it is in writing, and a partnership so formed is a partnership at will. (*Morris* v. *Peckham*, 51 Conn. 128; *Williams* v. *Jones*, 5 B. & C. 108; *Jones* v. *McMichael*, 12 Rich. Law, 176; *Essex* v. *Essex*, 20 Beav. 442; *Burdon* v. *Barkus*, 3 Giff. 412; 4 De G., F. & J. 42, 47 and 50; Reed's Stat. Fr. § 191; Lind. on Part. [5th Eng. ed.] 80, 81.)

We have not been referred to any case in this state wherein this proposition has arisen and has been decided. In *Smith* v. *Tarlton* (2 Barb. Ch. 336), the parties, by an oral contract, entered into and agreed to continue in partnership for three years. Before the expiration of the time limited two of the partners filed a bill against the third partner, alleging that the partnership property had been sold and the partnership dissolved by mutual consent, and that the defendant had misapplied the funds of the firm. An accounting and an injunction *pendente lite* was prayed for. An injunction was granted on the bill which the defendant moved, on the bill, to vacate, but the motion was denied, the chancellor saying:

" This was not, as the counsel supposes, an agreement which was not to be performed within one year, so as to require it to be in writing, under the statute of frauds. But it was the formation of an immediate partnership between the parties, which partnership was to continue three years, unless sooner dissolved by the consent of such parties. In this state no written articles are necessary to constitute a copartnership which is to take effect immediately, although a written agreement might be necessary to bind the parties to enter into a future copartnership to commence after the expiration of a year."

In *National Bank* v. *Van Derwerker* (74 N. Y. 234, 239), it was said : "But as to partnerships, although to endure for a longer period than a year, it has been held that they are not within the statute of frauds." (*Smith* v. *Tarlton*, 2 Barb. Ch. 336.)"

In the first case the complainants alleged that the partnership property had been sold and the firm dissolved by mutual consent, which was not denied. The question whether a partnership to continue more than one year, formed by an oral contract, was determinable by the will of either party, was not in the case. The second case did not arise between partners, but was an action brought against the shareholders in a joint-stock association, which existed under an oral contract, to recover the amount due upon executions against the association, which had been returned unsatisfied. It was held that the fact that the association existed under an oral contract was not a defense in favor of the shareholders and against a creditor of the association. The remark quoted was made while discussing the liability of the shareholders and cannot be regarded as a determination of the question.

An oral contract, invalid by the statute of frauds, because by its terms it is not to be performed within one year from the making thereof, is not validated by part performance. (*Billington* v. *Cahill*, 51 Hun, 132.) To hold that part performance is performance would be a nullification of the statute The agreement of March 8, 1880, cannot, under the facts found, be avoided for fraud or duress. It is not found that the position of Stephen O. and Theodore D. Barnum, that no legal partnership existed, was taken in bad faith. There is no finding that the Barnums made false representations or concealed any facts ; on the other hand, it appears that all of the facts now known were then known to the respondents. Duress *per minas* might be implied from the seventeenth and eighteenth findings of fact contained in the decision signed, but for the finding, made on the request of the appellants, " that the plaintiffs consulted counsel in the matter (the settle-

ment of March 8, 1880), and were not ignorant of their rights, if any, nor under duress." When findings of facts are so inconsistent that they cannot be reconciled, those which are the most favorable to the appellant are controlling on the appellate courts. (*Redfield* v. *Redfield*, 110 N. Y. 671; *Bennett* v. *Bates*, 94 id. 354; *Bonnell* v. *Griswold*, 89 id. 122; *Schwinger* v. *Raymond*, 83 id. 192.)

The facts found by the trial court are insufficient to support its decision that the oral compromise of March 8, 1880, "was without any good consideration, and was null and void."

The order and judgment should be reversed and a new trial granted, with costs to abide the event.

POTTER, J. (dissenting). The interlocutory judgment in this case is based upon the want of a legal consideration to support the second agreement of copartnership, or, as it is called for convenience in the briefs of counsel, the compromise agreement. If the compromise agreement is held valid, the accounting should not extend beyond its date. If held invalid, the accounting should extend to the 24th of June, 1879, the date of the first agreement of copartnership.

The question first to be considered upon this appeal is whether there is a valid consideration to support the compromise agreement. And, secondly, if there is a want of such consideration, are the findings sufficient in substance and form to support the determination based upon the want of such consideration?

It is elementary law, that an adequate consideration is essential to the binding force of a contract, whatever may be the form or the subject of the contract. Whether the contract is original, creating a *status* or condition of things that did not before exist, or whether it is secondary, changing the condition of things created by a former or existing contract, a consideration is as necessary to the secondary as to the primary contract. Hence a later contract, having precisely the elements of a former contract, is invalid and incapable of enforcement, for the reason that it

has no consideration. It becomes necessary, therefore, to analyze these two contracts of partnership and learn just what each contained, in order that we may see whether the party, who is alleged to have relinquished or modified a right or advantage that he had under the first, did so upon a good consideration. If he has not, and could not by a possibility derive any benefit from the relinquishment, there is no binding relinquishment, and he may still assert and maintain all the terms and rights to which he was entitled under the former agreement, and the former agreement is the only obligatory agreement between the parties.

Now, what were the rights of the parties under the former agreement of partnership, and which of them has been changed by the latter and what was the consideration for the change? This is the true test of all contracts, and, that, too, quite aside from duress or fraud. Whether or not the agreement was voluntary only goes to the state of mind of one of the contracting parties, and has reference to the competency of the party to make a binding contract.

And so fraud in the making of a contract will justify a rescission, without regard to the consideration. The element of fraud in a contract may, and often does, have more relation to the state of mind which the fraud has induced in one of the contracting parties than the value of the consideration.

But, in my apprehension of this case, there was a total and palpable want of a legal consideration moving the plaintiffs to the making of the second contract of copartnership.

The copartnership had been agreed upon verbally in every detail and particular. The parties had entered upon its performance, and continued to do so from June, 1879, to February, 1880, in which time the copartnership had made $60,000, and had established a lucrative and promising business, with ample credit and cash to continue it, when the defendant Theodore, for the first time, soon to be followed by his father in the assertion, pretended that there had been no partnership, and that the plaintiffs were not entitled to share in the profits

earned for the reason that written articles of copartnership had not been signed, and the plaintiffs had not paid the sums they were to contribute. The hollowness of these reasons is manifest from the evidence and the findings, that S. O. Barnum, who was not, and was not to be, a partner, was to procure the articles of copartnership to be drawn by his brother-in-law in Utica, at some future time, and that when they were prepared they were never signed by defendants Theodore and Chatfield or presented to the plaintiffs, signed by Theodore and Chatfield, with a request or requirement that the plaintiffs should sign them.

And as to paying in the capital to be contributed, it was to be done when required of the plaintiffs and Chatfield, and that of Chatfield was to be furnished him by defendant S. O. Barnum : and the same was never furnished him or offered to be furnished him by Stephen.

The terms of the new partnership were precisely the terms of the old copartnership, except that the copartnership was to date from the 10th day of January, 1880, the day of the completion of the inventory, showing that there had been made in the copartnership business $60,000, instead of the 24th of June, 1879, the day the copartnership was entered into, and, of course, before any profits had been made. It is true the plaintiffs were credited upon the books containing the copartnership accounts the sum of $3,000.

But they were each entitled to be paid or to be credited upon the same books the sum of $12,000, the share of each of them in the profits of $60,000.

This is a case where a party has received a smaller instead of a larger sum, undoubtedly his due, and now it is sought to be maintained that the smaller sum paid and satisfied the larger sum. This is not like the case of disputed or forgotten or erroneous items of claims and counter-claims, and of sums which affect and change amounts or aggregations. There is and can be in this case no doubt or difference of opinion or honest dispute about the amounts or nature or character of these two sums.

They are known and fixed at $3,000 as the smaller sum and $12,000, at least, as the larger sum. All the facts and elements resulting in those two sums of money, or in anywise relating to them, were fixed unalterably and were known perfectly, and so were incapable of misapprehension by the parties.

Now, as I apprehend the law in relation to the consideration essential to compromise or substituted agreements, there must be some material element of doubt, and that both parties are, or the promisee, at least, is acting in good faith in respect to such doubtful element. I will not stop to give the facts, but simply the language employed by the judges in their opinions in a few leading cases involving the question of consideration in this class of contracts. " The compromise of a claim wholly destitute of color or foundation, or not made in good faith, is not a good consideration for an agreement." If it appear that the party knew that the claim made (and compromise) was groundless or fictitious " (*Feeter* v. *Weber*, 78 N. Y. 334, 336, 338), "the claim must be a doubtful one." (*White* v. *Hoyt*, 73 N. Y. 505.) Judge RUGER quotes, with approval, and applies to the case then under consideration, in *Vanderbilt* v. *Schreyer* (91 N. Y. 401), the rule as stated by POLLOCK, that "neither the promise to do a thing, nor the actual doing of it, will be a good consideration if it is a thing which the party is bound to do by the general law, or by a *subsisting contract with the other party.*" He also quotes the rule, as stated by Parsons on Contracts (vol. 2, 437): "Nor is the performance of that which the party was under a previous valid legal obligation to do a sufficient consideration for a new contract." And Judge RUGER, in his opinion, cites numerous cases illustrating the rule. (*Crosby* v. *Wood*, 6 N. Y. 369; *Bartlett* v. *Wyman*, 14 Johns. 260; *Ayres* v. *C. R. I. & P. R. Co.*, 52 Iowa, 478; *Conover* v. *Stillwell*, 34 N. J. L. 54; *Reynolds* v. *Nugent*, 25 Ind. 328; *Harris* v. *Carter*, 3 E. & B. 559; *Stilk* v. *Myrick*, 2 Camp. 317, and several additional cases.) "It is essential that the claim be sustainable at law or in equity, or at least that it be doubtful either in its *right* or *amount.*" (*Sullivan* v. *Collins*, 18 Iowa, 228.)

" The surrender, *forbearance* or assignment of a claim having no legal validity is not a sufficient consideration for a promise." (*Kidder* v. *Blake*, 45 N. H. 530.) If we have reference to the cases cited by the appellant, we find those cases contain the same essential qualities in the consideration to support a compromise agreement. In *Miles* v. *Estate Company* (L. R., 32 Ch. Div. 266), COTTON, L. J., uses this language : " Now, what I understand to be the law is this, if there is, in fact, a *serious claim honestly made*, the abandonment of the claim is a good consideration for a contract. Now, by " honest claim " I think is meant this, " that a *claim is honest* if the claimant does not know facts, or does not know that his claim is unsubstantial, or if he does not know facts, to his knowledge, unknown to the other party, which show that his claim is a bad one." COCKBURN, C. J., says in *Callisher* v. *Bischoffsheim* (L. R., 5 Q. B. 449); " If he, *bona fide*, believes he has a fair chance (of sustaining his claim), then his forbearance (or surrender or abandonment of his claim, or a portion of it) will constitute a good consideration."

It seems to me it would be altogether unreasonable to argue, in view of the evidence and the findings in this case, that the Barnums made this claim *bona fide*, or could have entertained an honest belief that there had not been a partnership existing between them and the plaintiff from June 24, 1879, and while these profits were being earned, and down to the time of their discovery of the sixty thousand profits in January and February, 1880, and, therefore, such a belief could not constitute a valid and legal consideration for the substituted or compromise agreement. Nor can I see, in view of the evidence and findings in it, either made or possible to be made, that any other consideration for the support of the second agreement can be extracted.

If it should be argued or insisted that this verbal agreement of copartnership for three years was void under the statute of frauds, it might be effectually answered that *that* was not the point of controversy or difference that arose between these parties, and is not the question upon this appeal. Assuming,

for the purpose of considering such contention upon the part of the defendants, that a verbal contract of copartnership beyond one year is void and incapable of enforcement, that has nothing to do with this case. This case concerns a verbal contract *made* and actually *executed* from June to the succeeding February, and the fruits and results of the executed agreement. If the plaintiffs in this case were seeking to enforce the continuance of the first copartnership, that question would be before us, and there are some quite authoritative decisions that would seem to support such a contention upon the part of the plaintiffs. (*Nat. Bk. of Schuylerville* v. *Vanderwerker*, 74 N. Y. 224.)

But that case is not here, and we need not discuss it. What we are called upon to dispose of there is no legal question about, and *that* is, that an executed partnership, or one in process of execution, is valid, so far as executed, and confers the rights which are under consideration in this case. It is very manifest that it was not the question whether or not a copartnership existed between these parties, and if not, the desire to form one, that gave rise to this controversy, but it was how this large amount of profits should be *divided*, and the denial of the partnership was the *means* to that *end*.

If it shall be said that the plaintiffs made this second agreement because there was a doubt about the legal continuance of the first agreement, it may be replied that the second agreement did not cure the defects of the old, for the second agreement was not in writing, and so was terminated by Theodore the same as the first when it suited his pleasure so to do.

And so of the other pretext of the Barnums for the failure of the first agreement, viz., the delay of plaintiffs in paying into the firm the portions of capital that they had agreed to pay. There was delay and failure, in respect to those payments by plaintiffs, after making the second agreement, and the defendant Chatfield, who was to have been furnished under the first agreement with $5,000 by defendant S. O. Barnum, never put in anything toward the capital except the

credit of the $3,000 upon the occasion of the formation of the second partnership. My conclusion is that there was no valid and legal consideration to support the compromise agreement.

The remaining consideration in this case is whether the findings are, or can be, made within the settled rules of practice sufficient to support the judgment and order appealed from. We may here properly remark that it should not be the disposition of courts to allow a mere technical rule of practice to delay for a long time or to defeat the accomplishment of justice between litigants. The trial court found from the evidence all the facts relating to the formation, terms and execution of the first agreement of copartnership, and the court also found all the facts relating to the second agreement of copartnership, and found, as a conclusion of law from the facts so found, that the second agreement was void for want of a valid and legal consideration. It seems to me there is necessarily involved in the findings made the finding of the absence of any element which could constitute a valid consideration for the alleged compromise. Such as that there was a doubtful claim presented by the defendants to the plaintiffs, or that there was an honest and *bona fide* claim, or the belief in such a claim, on the part of the defendants, or that the defendant did not know that their claim was groundless or fictitious. If the defendants had a doubtful claim, or the defendants believed they had a claim, or honestly and in good faith put forward a doubtful or any claim, and abated anything therefrom in forming the second agreement, *that*, as matter of law, would have constituted a sufficient consideration for the compromise agreement. The conclusion of the trial court, that there was no consideration, necessarily negatives or is a finding that none of those elements or essentials to a good consideration existed in fact.

If the defendants desired a specific finding that any of those elements of a good consideration existed as a matter of fact, they should have requested a specific finding in that regard,

but they failed to do so and they cannot now be heard to complain. It cannot be a reasonable rule or requirement when a court has found all the facts requested, or facts sufficient to justify its conclusions of law, that it should be required, and without a request therefor, to write out a finding or a special plea or an argument of nice distinction wherein the evidence or the reasoning failed to sustain the contention of the unsuccessful party.

It seems to me very plain that the evidence in this case is ample to justify a finding that none of those essentials of a valid consideration existed, and where that is the case and a specific finding is necessary to support the judgment, and no request was made therefor, resort may be had to the evidence for the purpose of sustaining the judgment. (*Everson* v. *City of Syracuse*, 100 N. Y. 577–584; *Moores* v. *Townshend*, 102 id. 387; *Grant* v. *Morse*, 22 id. 323; *Oberlander* v. *Spiess*, 45 id. 175, and cases there cited.)

The order appealed from should be affirmed, with costs.

All concur with FOLLETT, Ch. J., except POTTER, J., dissenting.

Judgment reversed.