## CHICAGO, M. & ST. P. RY. CO. v. CLARK.

(Circuit Court of Appeals, Second Circuit. March 15, 1899.)

### No. 51.

**1. APPEAL—REVIEW OF JUDGMENT BASED ON FINDINGS OF REFEREE.**

On the review of a judgment ordered on confirmation of the report of a referee, containing his full findings of fact and conclusions of law, only those assignments of error can be considered which present the question whether the judgment is justified by the facts found by the referee.

**2. ACCORD AND SATISFACTION—CONSIDERATION—PAYMENT OF LIQUIDATED DEMANDS.**

Payment by a debtor of a liquidated amount, presently due, and to which he has no defense that can be urged in good faith or with color of right, is not, by itself, a sufficient consideration to sustain a release by the creditor of other unliquidated claims against the debtor. Per Lacombe, Circuit Judge.

**3. SAME.**

Defendant, a railroad company, which was indebted to plaintiff in amounts which were due and liquidated and undisputed, rendered him a statement of account, in which he was credited with such amounts only, and was charged with certain cross demands, which were unliquidated and open to dispute. It tendered payment of the balance shown by the statement to be due, on the execution by him of a receipt in full, which accompanied the statement. *Held*, that the execution of the receipt, and the making and acceptance of the payment, did not constitute an accord and satisfaction; there being no consideration for the release of the remainder of plaintiff's demand.

**4. ACCOUNT STATED—CONCLUSIVENESS—EFFECT OF ACQUIESCENCE.**

A party to whom an account is rendered is not concluded by acquiescence therein, or even by a settlement in accordance therewith, from proving the incorrectness of the account, unless the statute of limitations has barred his right, or the case is brought within the principles of an estoppel in pais or of an obligatory agreement between the parties. Per Wallace, Circuit Judge.

**5. APPEAL—REVIEW OF RULINGS ON MOTIONS FOR NEW TRIAL.**
Rulings on motions for new trial are not reviewable in the federal courts.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of the circuit court, Southern district of New York, entered April 6, 1898, in favor of defendant in error, who was plaintiff below, for $88,084.86, against the Chicago, Milwaukee & St. Paul Railway Company, defendant below. The judgment was entered upon the report of Hon. George Hoadley, as referee. The complaint set forth six separate causes of action. The referee found in favor of the plaintiff as to part of the claim declared upon in the first and as to the fifth cause of action. He found in favor of the defendant as to all the remaining causes of action. Inasmuch as the plaintiff has not sued out writ of error, it will be unnecessary to discuss any causes of action other than the first and fifth. The facts sufficiently appear in the opinion.

C. W. Bangs and Burton Hanson, for plaintiff in error.
L. Laflin Kellogg, for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). In March, 1886, a written contract was entered into between the parties, whereby Clark agreed to construct a line of railroad from Ottumwa, Iowa, to Harlem Station (afterwards changed to Randolph's Bluff), Mo., a total distance of about 202 miles, and the defendant agreed to pay therefor the lump sum of $3,954,600. The contract is an elaborate one, containing many detailed provisions, which it will be unnecessary to recite. It provided that the work should be done in accordance with the regulations of the chief engineer, "and in all respects to his satisfaction and acceptance," that the company would pay monthly installments from time to time as the work progressed, and make final payment whenever the said chief engineer should furnish "his certificate that all the stipulations and covenants in this agreement contained, to be by the said second party kept and performed, have been by said party well and truly observed and carried out, and that the said first party's railroad * * * has been by said second party constructed, built, completed, and finished, in all respects, in full conformity with the covenants and agreements hereinabove in that behalf made by said second party." As to extra work, it was provided that the second party should do such as might be required in writing by the chief engineer, and should "receive from said first party such just and reasonable compensation for such [extra material and work] as the said chief engineer shall fix and determine."

The entire work was completed to the satisfaction of the chief engineer, who furnished his certificate to that effect, in conformity with the terms of the contract. He also certified to certain extra work and materials, and fixed and determined the just and reasonable compensation therefor at $40,226.70. He also determined the amount of certain rebates, arising by reason of the fact that the company had made changes in its plan, had decided not to build six station houses and five sheds, and had itself done some of the contractor's work, such as track surfacing, fencing, etc. No one sug-

gests that there is any question of the power of chief engineer to adjust the amount of such rebate. Before the giving of the final receipt hereinafter referred to, it was settled, as against the company, by the decision of their own officer, by them selected for that purpose, that the plaintiff, by proper completion of his contract, and by doing the extra work and furnishing the extra materials required by the chief engineer, had earned the sum of $3,895,798.79. As to the work covered by this sum, not only was there no dispute, and never had been, that the work was done, and done in proper manner, but the price had been settled by agreement of the parties when the contract was entered into,—a lump sum for the regular work, and the prices to be fixed by the engineer for the extras. The claim for payment for such work was absolutely and finally liquidated.

There remained, however, some matters of dispute between the parties, of which two only need be considered, since for these two only did the referee find in plaintiff's favor. These are a claim for nut-locks charged to contractor, $9,558.63; and a claim for overtime penalty, $40,000.

As to the nut-locks. A nut-lock is a small iron or steel springing washer. It is a patented article. Soon after the contract began, the defendant made a shipment of them to plaintiff's superintendent in charge of the work, insisting that they should be used in bolting the rails. A controversy thereupon arose; the plaintiff, through his superintendent, denying that he was bound to supply nut-locks in building the road, and the company insisting that he was. Such controversy was temporarily disposed of in this way: Defendant furnished all the nut-locks required, and plaintiff put them in wherever directed, and the question who was to pay for them was postponed until final adjustment. When that time came, the sum of $9,558.63, the cost of the nut-locks, had been charged against plaintiff as a payment on account, and the question presented was whether he should be credited with a like sum. That question had been referred by defendant to the chief engineer, who had himself referred it to counsel for the road. The referee found these facts, and further found that "there are no provisions in the contract which require that the plaintiff, and the plaintiff never agreed that he, should use, in the construction of the railroad under said contract, any patented nut-locks." Inasmuch as the referee included the full text of the contract in his findings, it may be looked at to see whether it contains any such provisions. The only provisions which it is contended support this contention are these:

Article 1, § 1: "[Clark agrees] to furnish all the material for, and also to execute, construct, and finish in every respect in the most substantial and workmanlike manner, all the work hereinafter specified," etc. As to this, it is sufficient to say that the question whether nut-locks are essential to a substantial and workmanlike construction is a question of fact, and the referee has not found an affirmative answer to such question, but has expressly refused so to find.

Article 1, § 3: "Materials and workmanship required by said first party to be furnished or performed for, in, or about the work here-

inbefore mentioned, and hereinafter particularly specified and set forth, shall be furnished and performed in strict accordance with the rules, regulations, and specifications therefor now made, or hereafter to be made, by said chief engineer, and in all respects to his satisfaction and acceptance." The nut-locks are nowhere mentioned in the contract, nor particularly specified and set forth therein, unless they are to be included in the phrase, "most substantial and workmanlike manner," already referred to, or in one or other of the phrases, "splices and bolts of the J. T. Clark pattern," and "place and well bolt the splices in the most approved manner," which are next to be considered.

Article 6, § 1: "[Clark further agrees] to furnish and lay in place all the track material required, * * * including steel rails of sixty pounds per yard, splices and bolts of the J. T. Clark pattern, and spikes and ties, and all said material shall be of the said first party's standard and size." Article 6, § 4: "To place and well bolt the splices thereof, and do all work of laying said tracks, in the most-approved manner." Whether a nut-lock is an essential, or even a usual or frequent, component of the "J. T. Clark pattern" of splice and bolt; whether it is included within defendant's "standard" of track-laying; whether the "most-approved manner" of track-laying makes use of nut-locks,—are all questions of fact, and there is no finding of an affirmative answer to any one of them.

There is nothing in the record, therefore, to sustain the contention of plaintiff in error as to the nut-locks being required by the provisions of the contract. The briefs contain references to the testimony, but no alleged errors in the findings of fact are before the appellate court for review or correction. The practice in cases heard by referee is laid down by the supreme court as follows:

"As the court in its judgment ordered his findings to stand as the findings of the court, the only questions before this court are whether the facts found by the referee sustain the judgment. As the case was not tried by the circuit court upon a waiver in writing of a trial by jury, this court cannot review exceptions to the admission or exclusion of evidence, or to findings of fact by the referee, or to his refusal to find facts as requested." Shipman v. Mining Co., 158 U. S. 361, 15 Sup. Ct. 886.

There is no error, therefore, in the conclusion of the referee that the defendant was not entitled to charge the cost of the nut-locks against the plaintiff as a payment on account.

As to overtime penalty. The defendant insisted that, by reason of some delay of the contractor in completing the work, it became entitled to offset against whatever he had earned under the contract the sum of $40,000. The findings of the referee on this branch of the case are as follows:

"(6) That the plaintiff made and entered into a supplemental contract whereby he agreed with the defendant to complete his performance of said contract on or before June 1, 1887, and to allow the said defendant, by way of forfeiture, in case the said railway were not so completed by the 1st of June, 1887, the sum of $40,000. (7) That the defendant failed to furnish the plaintiff with rights of way, as by said contract it had agreed to do, in time to enable the plaintiff to complete his contract prior to the 1st of June, 1887, or prior to the 1st of August, 1887, but, on the contrary, delayed the plaintiff in the performance of said contract at a point upon the said road known as Minneville until October 27, 1887, by reason of the neglect, failure, and omis-

sion of the defendant to obtain the necessary right of way at said point so as to permit the construction of the road and completion of the contract at said point. (8) That the plaintiff was thereby prevented from completing his contract on or prior to August 1, 1887, and also on or prior to June 1, 1887, by the negligence, omission, and fault of the defendant."

Upon these findings there seems to be nothing left to be said. Indeed, the argument of plaintiff in error is really to the effect that the findings of fact are incorrect; that rights of way were acquired at Minneville earlier than October 27, 1887, or that delay as to securing rights of way did not prevent plaintiff from completing his contract. But, under the authority above cited, these are matters which the appellate court will not consider. There is no error, therefore, in the referee's conclusion that the defendant was not entitled to charge this item of $40,000 against plaintiff as a payment on account. It is not understood, however, that the referee has held, nor is it intended in this opinion to hold, that there was any bad faith on the part of the company in advancing these claims for the nut-locks and overtime penalty. Both items were legitimate matters of dispute, and, unless settled by agreement of the parties, might fairly be brought by either party into court.

Out of the moneys earned under the contract for specified and for extra work, the defendant has retained these two sums of $9,558.63 and $40,000. To that extent ($49,558.63) it has not paid the amount earned, certified by the engineer, and included in the final estimate, and for those items the referee has reported, and the court has adjudged, in favor of the plaintiff. Error is assigned in that the referee found facts showing, as is contended, an accord and satisfaction which operated to release all claims for these items, but nevertheless found, as a conclusion of law, that no such defense was established. This is the real question in the case, and, indeed, the only question presented upon this review.

It will be remembered that when the work had been completed it appeared by the certificate of the chief engineer, and by the final estimate, that plaintiff had earned $3,895,798.79. The certificate, taken in connection with the contract, liquidated his earnings at that amount, and the railroad was in no position to litigate in good faith as to the amount of those earnings. As is usual, however, in works of this character, plaintiff had been paid certain sums in cash upon monthly estimates, and there were also charged against him, as payments, various sums expended by the company for materials, and various charges for labor and transportation furnished by it. These various credits to the company aggregated $3,626,865.20, and, except as to the nut-locks, there was not, and apparently never had been, any controversy between the parties touching this amount. In this condition of affairs, and on March 9, 1888, the plaintiff signed and delivered to a representative of defendant a paper writing or receipt presented to him by the defendant for signature (a copy will be found infra), and on the same day received from the defendant a check for the sum of $173,532.49, which he retained and cashed. There is nothing in the findings to show that plaintiff signed this receipt improvidently, or without due consideration, nor that it fails in any way to set forth accurately the agreement entered into between the parties on that day, nor that the plaintiff was under any

pecuniary stress pressing him to accept a smaller sum than was due. The receipt reads as follows:

"Whereas, a final estimate has been made by D. J. Whittemore, chief engineer of the Chicago, Milwaukee and St. Paul Railway Company, of all the work done, and material furnished, under the contract made between said railway company and Heman Clark, bearing date March 8, 1886, for the construction of the railroad from Ottumwa, in Iowa, to the Missouri river, including all extra work performed, and material furnished, of every kind and description, which estimate, with the prior monthly estimates, less deductions made for work not done and work assumed by said company, amounts to $3,895,798.79; and whereas, the further sum of $34,598.90 should be credited to said Clark for materials sold by him to said company, and certain rebates and other matters of that description, making, with the amount of said estimates, the sum of $3,930,397.69; and whereas, the said Chicago, Milwaukee and St. Paul Railway Company has paid the said Clark, to apply on said contract, in money, material, labor, and transportation, the sum of $3,626,865.20; and whereas, by the terms of section 4, art. 13, of said contract, said Clark was to be charged, in addition, for transportation, the sum of $50,000, and by a supplemental contract was to allow the said railway company, by way of forfeiture, in case said railway was not completed by the first day of June, 1887, the further sum of $40,000, making the amount paid on said contract, together with the allowance of said transportation and the allowance of said forfeiture, the sum of $3,716,865.20, leaving the amount still due said Clark on said contract the sum of $213,532.49; and whereas, in and by said contract, it was provided that the said Heman Clark, party of the first part, should save the said railway company free and harmless from all claims that might be made against said railway company for liens of workmen and claims of subcontractors, and from all damages arising from not keeping sufficient fences to preserve crops and restrain cattle, and from all damages for cattle or other domestic animals killed or injured, and from all damages suffered by said subcontractors and employés while engaged upon said work, of which said class of claims about $40,000 in amount have been made upon and are now pending in courts by divers claimants against said railway company, and the sum of $40,000 of the amount so due as aforesaid, under said contract to the said Heman Clark, has been reserved and set aside by said railway company as indemnity or security for the payment of said claims and of such other claims of the same class as may hereafter be made, in case said claimants, or any of them, recover judgments against said railway company, and the said $40,000, or the balance thereof, after paying and settling such claims as may be established against said railway company, is to be paid over to the said Heman Clark as soon as said claims are satisfied or said railway company suitably indemnified from any loss on account of the same, which $40,000, deducted from the sum of $213,532.49, so as aforesaid due said Clark, leaves due and owing by said railway company, and now payable on said contract, to said Heman Clark, the sum of $173,532.49: Now, therefore, be it known that I, the said Heman Clark, have received of and from the said Chicago, Milwaukee and St. Paul Railway Company the sum of one hundred and seventy-three thousand five hundred and thirty-two and $^{49}/_{100}$ dollars ($173,532.49), in full satisfaction of the amount due me on said estimates, and in full satisfaction of all claims and demands, of every kind, name, and nature, arising from, or growing out of, said contract of March 6, 1886, and of the construction of said railroad, excepting the obligation of said railway company to account for said forty thousand dollars, as hereinbefore provided.                                                        Heman Clark.

"Wm. C. Edwards."

This document was prepared by defendant, and sent to plaintiff, with the information that, upon its signature and return, a check would be delivered to him for the sum named. It will be noted that by the terms of this receipt the disputed items, nut-locks and over-time penalty, are both disposed of, according to defendant's conten-

tion,—the penalty in an item by itself, and the nut-locks by inclusion (as the referee finds) of the $9,558.63 in the item of $3,626,865.20 "paid on account." The referee held that this transaction of March 9, 1898, did not constitute an accord and satisfaction, for the reason that the agreement whereby Clark undertook to give up his claims against the company for the nut-locks and overtime penalty was "without consideration of any kind, but was a simple uncompensated surrender of lawful rights on his part." The referee's opinion states his conclusion as follows:

"The claim of Clark against the company, for the sum of $3,930,397.69, was a liquidated sum,—liquidated by the umpirage of the chief engineer, as proved by the final certificate and estimate and by this receipt prepared by the company. * * * It could not be discharged by the payment of a smaller sum. Had it been an unliquidated or disputed claim, or a claim upon a quantum meruit, requiring a valuation of worth or material, different considerations might arise; but these are, properly speaking, undisputed claims. These are claims which the company had no right to dispute, and the written concession contained in this receipt by Clark was based upon no consideration whatever."

The agreement between parties which is known to the law as "accord and satisfaction" is a contract, and, like all other contracts, it needs a consideration to make it valid. Without consideration, it is nudum pactum. The consideration may present itself in many different shapes. It may be found in premature payment; in payment in some manner different from that bargained for in the original contract; in the giving of some desired article in place of money; in the giving of further security or of different security for the reduced amount; in mutuality of concession; in abandonment of a right to litigate or to appeal. But in some form or other a consideration must be found. There must be some advantage, or presumed or assumed advantage, accruing to the party who yields his claim. "The accord and satisfaction must be advantageous to the creditor. He must receive from it a distinct benefit, which otherwise he would not have had. Thus, to an action for wrongfully taking cattle, it is no plea that it was agreed plaintiff might have them, for this the law would have given him." 2 Pars. Cont. (8th Ed.) p. 804. "In order to establish a defense of this character, there must be present in the transaction upon which it rests all the elements of a complete contract,—a lawful subject-matter, a sufficient consideration, and the aggregatio mentium, or mutual assent, of the parties." Fuller v. Kemp (1893) 138 N. Y. 236, 33 N. E. 1034. "A creditor cannot bind himself by a simple agreement to accept a smaller sum in lieu of an ascertained debt of larger amount, such an agreement being nudum pactum. But if there be any benefit, or even any legal possibility of benefit, to the creditor thrown in, that additional weight will turn the scale, and render the consideration sufficient." Goddard v. O'Brien, 9 Q. B. Div. 37. "All that is necessary * * * is a sufficient consideration to support the substituted agreement. The doctrine is fully sustained in Allison v. Abendroth, 108 N. Y. 470, 15 N. E. 606 (Andrews, J.): 'Where there is an independent consideration, or the creditor receives any benefit, or is put in a better position,' etc." Jaffray v. Davis (1891) 124 N. Y. 164, 26 N. E. 351.

"An accord and satisfaction * * * must be an executed contract, founded upon a new consideration." Nassoiy v. Tomlinson (1896) 148 N. Y. 326, 42 N. E. 715. The adequacy of the consideration will not be gone into by the court, if it be what is known to the law as a "valuable consideration."

This principle that there must be some benefit, or possibility of benefit, to the creditor, fundamental though it be, seems not to have been always kept in mind. There are reported cases in which accord and satisfaction is found by the court where it is impossible to determine from the opinion and the statement of facts whether or not the creditor received any consideration whatever. See Palmerton v. Huxford (1847) 4 Denio, 166; Preston v. Grant (1861) 34 Vt. 201. There are others in which a like decision is reached, although a careful analysis of the facts as reported would seem to indicate the entire absence of any consideration. See Lestienne v. Ernst (1896) 5 App. Div. 373, 39 N. Y. Supp. 199; Lumber Co. v. Brown (1896) 68 Vt. 239, 35 Atl. 56; Hills v. Sommer, 53 Hun, 392, 6 N. Y. Supp. 469. In neither of these groups of cases does the precise point under discussion appear to have been brought to the attention of the court. There are other cases in which the question of consideration is not discussed, but so much is said as to the tender of the money or a draft by one party being clogged with a condition, which will operate to bind the other party if he accepts it, that it might almost be thought the defense was being upheld on some principle of estoppel.

The referee was sound in holding that a receipt in full, and payment of balance stated therein, cannot be sustained as an accord and satisfaction, unless some benefit was thereby secured to the creditor which but for the settlement he would not have had. This is the rule laid down, in terse and precise terms, in a case repeatedly cited on the brief of plaintiff in error, where "accord and satisfaction" is defined as "something of legal value, to which the creditor before had no right, received in full satisfaction of the debt, without regard to the magnitude of the satisfaction." Bull v. Bull (1876) 43 Conn. 455. Where, upon settlement, the only items in dispute are resolved in the debtor's favor, no consideration passes unless the creditor's claim is "unliquidated"; using that word as meaning that, as to the items which he receives upon the settlement, he would be compelled, but for a settlement, to bear some further burden in order to have their amount so fixed that the debtor would be bound thereby. This is always the case where the creditor's claim rests upon a quantum meruit. Thus, where a physician charged $5 a visit for 126 visits, and $10 each for 4 consultations, no agreement having been made in advance as to the rate to be charged, the court said: "The original contract, which the law implied, was an agreement on the part of the defendant to pay the plaintiff what his services were reasonably worth. From the very nature of the case, a further agreement must be reached by the parties, fixing the value of the services, or else resort must be had to a judicial determination for that purpose." Fuller v. Kemp (1893) 138 N. Y. 236, 33 N. E. 1034. In that case the consideration on which accord and satisfaction was sustained was the giving up by the debtor of his

right to compel the plaintiff to resort to judicial determination to fix the quantum meruit of the visits he did make, even if there were no dispute as to their number. And it is manifest that it makes no difference, when such a claim is being adjusted, that the creditor agrees to a quantum meruit which he was always willing to pay; because, so long as the fixation of the amount rested merely on his good will, he was still in a position to change his mind. He could still, in perfect good faith, verify an answer which would make it necessary for the creditor to "liquidate" his claim by a lawsuit. In such a case, it may nevertheless be said that the amount finally paid was "not disputed," using these words without technical precision; and thus we find many cases in the reports in which it would appear, on a casual inspection, as if the payment of an undisputed indebtedness were held sufficient to sustain an accord and satisfaction. And in some cases the terms "liquidated" and "unliquidated" are used without any very exact attention to the real distinction between them; indeed, in most of the reported cases it was wholly unnecessary to note such distinction, since the presence of a valuable consideration is entirely plain. The rule of law as to accord and satisfaction is usually stated thus: "Payment by a debtor of a part of his liquidated debt is not a satisfaction of the whole, unless made and accepted upon some new consideration, but where the debt is unliquidated the rule does not apply." When, however, a creditor's claim is made up in part of an amount so adjusted by agreement of the parties that the debtor cannot in good faith contest it, and in part of an amount not thus adjusted, and the debtor pays only the adjusted portion of the claim, and insists on a release of the entire or unadjusted portion, without any new consideration moving to the creditor, reason and principle would require a decision that there has been no accord and satisfaction, and, except for the few cases referred to above where the point was not discussed, the authorities are in harmony with such a decision. The rule might be more accurately stated: "Payment by a debtor of a liquidated amount, presently due, and to which he has no defense that can be urged in good faith or with color of right, is not, by itself, a sufficient consideration to sustain a release by the creditor of other unliquidated claims against the debtor." Of course, it makes no difference that eventually it turns out that some supposed legal defense of the debtor is held to be insufficient. If he is in a position to litigate in good faith, and with some color of right, and gives up his right to throw the claim into court, he gives a valuable consideration for any settlement, and no claim to which such a defense may be interposed can be fairly called a "liquidated claim," even to the extent to which the debtor may have theretofore expressed his willingness to pay. "If it appears that the claim furnished opportunity for controversy, although a favorable result could not have been safely predicted, * * * sufficiency of consideration would be established." Zoebisch v. Von Minden (1890) 120 N. Y. 406, 24 N. E. 795. And see Nassoiy v. Tomlinson (1896) 148 N. Y. 326, 42 N. E. 715; Bank v. Blair (1865) 44 Barb. 641; Lumber Co. v. Brown (1896) 68 Vt. 239, 35 Atl. 56; Fuller v. Kemp, supra.

Analysis of the leading reported cases will show that, although it is not always discussed in the opinion, a valuable consideration is found to be present wherever a defense of accord and satisfaction has been sustained. The brief filed by the learned counsel for plaintiff in error presents such a comprehensive selection of authorities that it will be sufficient to refer to its citations.

First to be considered is a group of decisions of the United States supreme court, where claimants for supplies furnished to the government were held foreclosed by receipt in full and acceptance of part of their original claims. It should be remembered that the United States treasury pays only out of appropriations and upon. audit. There being many claims for military stores furnished during the Civil War, congress created a special board to pass upon their validity and amount. No one was required to bring his claim before such board, but, if he did, payment was at once secured to him of whatever amount the board might find due, out of a special appropriation made for the purpose. Payment on all these claims out of the ordinary appropriations had been suspended by order of the treasury department. "From the time the secretary issued his order, suspending the payment, * * * they must be regarded as claims disputed [i. e. the whole claim] by the government, and, unless the board had been constituted, could have been adjusted only by congress or the court of claims." U. S. v. Adams (1868) 7 Wall. 463. In all these cases the amounts paid in settlement were unliquidated, since, but for the finding of the board, the government could have litigated them all in good faith; and in giving up resort to the court, at the same time going to the expense of constituting a special tribunal to adjust the claims, and securing the more expeditious payment of what might be found due, there was certainly abundant consideration to sustain the settlements. Id.; U. S. v. Child (1870) 12 Wall. 232; U. S. v. Justice (1871) 14 Wall. 535.

In Sweeny v. U. S. (1872) 17 Wall. 77, the claim was clearly unliquidated as to every part of it, involving the question of reasonable compensation,—a circumstance which appears from the opinion: "Enough appears to satisfy the court that the charter party was superseded, and that the claim in fact was for a quantum meruit, and as such that it was a proper subject of compromise."

In U. S. v. Martin (1876) 94 U. S. 400, plaintiff, a laborer, claimed extra pay under some construction of the eight-hour law. He presented his claim to the auditor in 1873, and received $205, giving a receipt in full. He subsequently brought suit for the balance in the court of claims. The payment of the $205 was a sufficient consideration, since the entire claim was fairly disputable in the courts.

In Baird v. U. S. (1877) 96 U. S. 430, plaintiff had a contract with the government to furnish certain locomotives. The stipulated price was—First, a fixed sum for each locomotive; second, any advance there might be after a certain date in cost of labor and materials; and, third, any damages resulting from giving the government's order preference over others. The fixed price had been paid, and the damages recovered by suit. Plaintiff presented a claim for $151,588 for entire cost, which was audited and allowed for $97,507, and

plaintiff informed of the principles upon which the adjustment was made. He took draft for the amount, and collected it. Held an accord and satisfaction. Manifestly, every dollar of the claim of $151,588 was unliquidated, and susceptible of liquidation only by consent of the government or by the courts. Assent to an adjustment at $97,507 was a valuable consideration. Pray v. U. S. (1883) 106 U. S. 594, 1 Sup. Ct. 483, is not in point; and in Boffinger v. Tuyes (1887) 120 U. S. 198, 7 Sup. Ct. 529, there was abundant consideration in the abandonment of a right to appeal. In Association v. Wickham, 141 U. S. 579, 12 Sup. Ct. 84, premature payment was held a good consideration.

In Battle v. McArthur, 49 Fed. 715, plaintiff had a contract for grading a railroad, and compensation was at fixed prices for the units of different kinds of work done. There had been a long dispute as to the classification of hardpan by the engineers, i. e. as to how many units of rock and earth excavation, respectively, should be paid for. After the work was done, and the amount of final estimate was being settled on, a conference was had, of which Thayer, J., says: "The percentage of loose rock excavation thus demanded was not allowed, but it caused the chief engineer to raise the classification some 20 per cent., and that increase entered into the final estimate." Here was a concession and payment, which certainly constituted a good consideration.

In Davenport v. Wheeler (1827) 7 Cow. 231, there was no agreed price for the salt, the claim was for a quantum meruit, and consideration is found in the agreement as to price per pound of the salt paid for; defendant waiving his right to compel plaintiff to go into court to secure a "liquidation" of his claim as to any part of the salt delivered.

Vedder v. Vedder (1845) 1 Denio, 257, involved mutual claims for damages for trespass. Defendant's liquidation of plaintiff's claim against him at an amount satisfactory to the plaintiff was a good consideration for his agreement to accept it in full.

In Ryan v. Ward (1872) 48 N. Y. 204, and Bunge v. Koop, Id. 225, the defense of accord and satisfaction was not sustained.

Gray v. Barton (1873) 55 N. Y. 71, was decided upon the principles of law governing "gifts."

In Ludington v. Bell (1879) 77 N. Y. 143, the court found, in the giving of a promissory note of a single partner, a good consideration for accord and satisfaction of a larger claim against the firm.

Coulter v. Board, 63 N. Y. 365, is not in point. The cause was decided upon the peculiar language of a clause in the contract under which the work was done.

The claim in People v. Board (1884) 96 N. Y. 640, was for a quantum meruit.

In Wahl v. Barnum (1889) 116 N. Y. 87, 22 N. E. 280, the court found consideration in the recognition, by the party claiming the benefits of the compromise, of the existence of a partnership, which the other party might have found it difficult to establish by suit. There was vigorous dissent, and the consideration is rather vague and shadowy, but the court clearly recognized the principle here

contended for, since it sought for a valid consideration to support the contract.

In Zoebisch v. Von Minden (1890) 120 N. Y. 406, 24 N. E. 795, the defendant gave up his right to litigate defenses.

In Jaffray v. Davis (1891) 124 N. Y. 164, 26 N. E. 351, the claim was liquidated, and the defense of accord and satisfaction was not sustained. The opinion contains an interesting review of the authorities.

Fuller v. Kemp (1893) 138 N. Y. 236, 33 N. E. 1034, has already been discussed supra.

In Nassoiy v. Tomlinson (1896) 148 N. Y. 326, 42 N. E. 715, an action for commissions on sale of real estate, neither fixed sum nor rate per cent. had been agreed upon by the parties in the original contract. When the service was rendered, therefore, the compensation to be paid was wholly undetermined. This case well illustrates the distinction between the words "undisputed" and "liquidated." The real estate sold for $30,000. Plaintiff claimed 5 per cent.,—$1,500. Defendants resisted such claim, but were always ready and willing to pay 1 per cent.,—$300. This was the sum eventually paid, and receipt in full given, which the court held to be an accord and satisfaction. Now, it might be said that a claim for $300 was "undisputed," since up to the time of payment defendants had not in fact disputed it; but it was not "liquidated," because its amount had not been fixed by agreement of the parties or by litigation or otherwise. Their prior "willingness not to dispute" did not bind the defendants to remain in the same frame of mind; non constat but they might at any time, by refusing to agree to any precise amount, throw the plaintiff into court. Their final liquidation of the claim at $300, and payment thereof, cut off absolutely their right to litigate as to the value of the services, and was a good consideration.

Hills v. Sommer (1889) 53 Hun, 392, 6 N. Y. Supp. 469; Palmerton v. Huxford (1847) 4 Denio, 166; Lestienne v. Ernst (1896) 5 App. Div. 373, 39 N. Y. Supp. 199; Preston v. Grant (1861) 34 Vt. 201; Lumber Co. v. Brown (1896) 68 Vt. 239, 35 Atl. 56,—have been referred to supra.

In Bank v. Blair (1865) 44 Barb. 641, the defendants had interposed defenses to an action on the notes which, if sustained, would prevent recovery. "There is," says the court, "nothing before us indicating that the defenses were unsubstantial or fictitious; they were solemnly interposed and insisted on." Their withdrawal was held a good consideration.

In Green v. Manufacturing Co. (1873) 1 Thomp. & C. 5, the court says: "There was, so far as appears, a bona fide dispute by the defendants as to whether they were bound to pay the plaintiff any thing for what was claimed as extra work; and, at all events, it is not disputed but that whatsoever the plaintiff was entitled to for extra work was upon a quantum meruit."

In Pardee v. Wood (1876) 8 Hun, 584, the debtor, in addition to paying $1,500 on a $2,000 claim, agreed to make no claim for certain machinery then held by the plaintiff as collateral to an indebtedness from a third person. "This," says the court, "was a distinct

consideration, and sufficient to sustain the receipt as a final accord and satisfaction."

In Looby v. Village of West Troy (1881) 24 Hun, 78, the whole claim was disputed on the ground that under its charter the village could not incur liability in excess of appropriation. The abandonment of this defense as to the part paid in settlement was a sufficient consideration.

In Donohue v. Woodbury (1850) 6 Cush. 148, Shaw, C. J., says: "Originally, the present was a claim for services, and was for unliquidated damages. Some services were admitted to have been rendered, but the amount was denied, and an offer was made of a less sum than that claimed. The case was open to two inquiries: First, as to the time of service; and, second, as to the rate."

In Bull v. Bull (1876) 43 Conn. 455, certain "pictures" were taken as part of the consideration.

In McDaniels v. Lapham (1849) 21 Vt. 222, the sum really due plaintiff was entirely unliquidated, and could only be ascertained by having an account taken of the rents and profits, and "the whole matter had been involved in protracted litigation for several years."

In Potter v. Douglass (1877) 44 Conn. 541, "there was no special agreement between the parties in relation to the amount the plaintiff was to receive for his services, and he was therefore entitled to receive only what they were reasonably worth. * * * Doubtless the object which defendant had in view in making the offer was to avoid the present controversy. He would rather buy his peace by paying a sum of money that he did not owe than possibly defeat plaintiff at the end of an expensive and irritating lawsuit."

In Tanner v. Merrill (Mich.) 65 N. W. 564, the decision, rendered by a bare majority, entirely sustains the contentions of plaintiff in error; but the reasoning is not persuasive, nor the conclusion in harmony with the best authorities.

The next question to be considered is whether the referee properly applied the rules of law above enunciated to the facts found in the case at bar. It appears, as has been already shown, that at the time the receipt in full, or proposed "accord," was prepared and submitted to plaintiff for his acceptance, the amount earned under the contract ($3,895,798.79) was a claim against the defendant, "liquidated," in the strictest meaning of the term. Not only was it undisputed, in the sense that defendant was willing to pay it, but it was no longer open to dispute, even if it wished to dispute it. As to the work called for by the contract, that instrument bound the defendant to pay the sum shown by the final estimate to be due whenever the chief engineer should certify to proper completion, and he had so certified. The price for such work was fixed by the contract itself. As to the extra work, the chief engineer had certified that he had ordered it, that it was done, and had fixed and determined the price for it, and the contract bound the company to pay the price so fixed. Therefore, except for the single defense of payment, the company was wholly without defense to the claim for that sum ($3,895,798.79). It could not contest it in court "with good faith," nor with "any color of right." Had plaintiff before

March 9, 1888, brought suit for the balance of such sum remaining unpaid, after crediting defendant with all the items of payment it asserted it was entitled to charge, the railroad company could not, assuming that its officers were conscientious, even have verified an answer which could have raised any issue or delayed plaintiff's entry of judgment beyond the time necessary to notice a motion for judgment upon the answer as frivolous. As to the items of payment which the company insisted upon, all were, and always had been, conceded by plaintiff, except the cost of the nut-locks and the over-time penalty. When, therefore, both these items were credited to defendant in the receipt, it parted with nothing—not even a right to litigate—in agreeing to pay, and in actually paying, the balance remaining of the liquidated amount earned under the contract, after deducting all alleged credits for payment. Hence there was no consideration moving to the plaintiff by reason of the payment of this sum on March 9, 1888, and, unless some other benefit to plaintiff can be found to support it, his agreement, implied by receipt in full, to abandon all claim to the cost of nut-locks and overtime charge, was without consideration and nudum pactum.

By reference to the receipt in full, which is set forth in the thirteenth finding of fact, it will be found that the instrument disposed of another item, not hereinbefore referred to, in these terms: "And whereas, the further sum of $34,598.90 should be credited to said Clark for materials sold by him to said company, and certain rebates and other matters of that description," etc. This sum is, by the statement of account set forth in such receipt, credited to Clark, and is included in the $173,532.49 paid to him upon his signing such receipt. From what has been said before, it is plain that if, at the time of the transactions relied upon as showing accord and satisfaction, this sum of $34,598.90, so allowed to Clark, represented an unliquidated item, the amount of which he would have to establish by evidence in case he had sued to recover it, its allowance to him upon the settlement of March 9, 1888, would be a sufficient consideration to uphold that settlement against him as an accord and satisfaction of all his claims.

The findings of fact do not give much information as to the details of this item. It is suggested that the testimony in the case shows that it covers surplus materials, such as rails, spikes, bolts. etc., which Clark had brought on the line of work, but had not needed; that, it being more advantageous to sell them where they lay than to transport them elsewhere, plaintiff had agreed with defendant that it would take them off his hands,—had made "a trade outside of the contract." But with the testimony this court has nothing to do. It sufficiently appears from the findings that part, at least, of this sum was for "materials sold by [Clark] to said company." From the engineer's certificate, which is included in the findings, it appears that this item represented no part of the work specified under the contract, and no part of the extra work and materials ordered by him; that it was not included in his certificate, nor in the final estimate; that he made no decision about it one way or the other; and apparently that he never undertook to pass upon it. Therefore it

was not liquidated by the original contract, nor by any action of the chief engineer thereunder. Indeed, it is plain to a demonstration, from the findings, that the item in question was not included either in the original contract or in the extra work, and must represent an additional and independent contract of sale. What the terms of that contract of sale were the findings do not disclose. If they were of such a character as to leave the price of the articles sold open to future adjustment, and if no binding agreement of the parties had subsequently adjusted such price,—in other words, if on March 9, 1888, the situation was such that the plaintiff, put to his suit, could have recovered this item only by proof of amount furnished or of reasonable value, or of both,—then it was an unliquidated item, and its allowance to the plaintiff on settlement would be a good consideration to support the contract of accord and satisfaction. If, on the contrary, before that time; either when the independent contract was made or later, the parties had settled upon the quantities delivered, and had agreed upon the price, not by some mere expression of willingness to pay a particular amount, but in such way as to preclude further litigation "in good faith" or "with any color of right," then the allowance and payment of the $34,598.90 would not constitute good consideration.

The only light we have upon this question is found in a single clause—indeed, practically in a single word—of the fourteenth finding of fact: "That said receipt and paper contained an accurate, truthful, and undisputed account of all dealings between said parties, except in the matter of the forfeiture," etc. It is quite manifest, from the findings and conclusions, that the referee uses this word "undisputed" as synonomous with "liquidated." He was evidently satisfied from the testimony that the prior transactions between the parties were such that this sum was no more open to dispute than was the sum of $3,895,798.79 to which the chief engineer had certified. By what process it was so liquidated does not appear in the findings, and no one seems to have asked the referee to find the facts more specifically. We must take his finding, therefore, as conclusive upon the question, and assume that either by agreeing for a price in advance, or subsequently, by entering into some binding agreement as to the sum to be paid, the defendant had lost its right to throw the plaintiff into court as to that item. Its allowance and payment, therefore, could not constitute a good consideration for the alleged accord and satisfaction.

It will be perceived that upon the settlement the railroad company retained $40,000 to meet claims. As to this, the referee has found that:

"The defendant railway company has duly accounted for the expenditure of the said sum of $40,000 so reserved as aforesaid to meet, or as an indemnity against, claims which were made against said company for liens of workmen and claims of subcontractors, and other claims for damages, paid by the defendant railway company, and for the expenditure of $521.75 in addition thereto, which sum the defendant railway company is entitled to recover from the plaintiff, with interest."

No one disputes the correctness of this conclusion.

As to the fifth cause of action, the referee found as follows:

"(19) That, in or about the months of March and April, 1888, the plaintiff was the owner of 97,000 feet, B. M., bridge timber, then in the yard of the defendant at Chillicothe, and along the line of the railroad. (20) That the said lumber did not conform to the standard of the defendant, and was not purchased by the defendant from the plaintiff, or allowed in the final certificate of the chief engineer, under the contract in this section, to the plaintiff. (21) That, in and about the month of June, 1888, the defendant took possession of the said lumber, and converted the same to its own use, without assent or knowledge of the plaintiff. (22) That the value of the said lumber at the time of the taking, in June, 1888, was $2,425."

Having waived the tort, and elected to sue on implied contract, plaintiff could quite properly include this cause of action in his complaint. This transaction out of which it arose took place after the making of the engineer's final certificate, and after the signing of the receipt in full. It would therefore be in no way affected thereby, whether such receipt in full be held to constitute an accord and satisfaction or not. Upon these findings, the conclusion of law that "plaintiff is entitled to recover from the defendant the sum of $2,425, with interest from June 1, 1888, for the conversion by the defendant of lumber belonging to the plaintiff," is manifestly correct. Indeed, the only objection urged by plaintiff in error is that there was not competent evidence to sustain the findings of fact; but that question is not reviewable here.

It seems proper to call attention to the fact that the court has been greatly hampered and embarrassed by the inordinate size of the record in this case. In view of the well-settled limitations which confine the reviewing court, in such cases, strictly to questions of law, it would seem desirable that the record should be restricted to the presentation of such questions only.

The judgment of the circuit court is affirmed.

WALLACE, Circuit Judge (concurring). This is a writ of error brought by the defendant in the court below to review a judgment for the plaintiff ordered by the court upon the confirmation of the report of a referee before whom the action was tried by the stipulation of the parties. The report contains a full finding of the facts by the referee, and sets forth his legal conclusions thereon. Only those assignments of error can be considered which present the question whether, upon the facts found by the referee, the judgment is wrong. Roberts v. Benjamin, 124 U. S. 64, 8 Sup. Ct. 393; Shipman v. Mining Co., 158 U. S. 356, 15 Sup. Ct. 886.

Most of the assignments of error present the question whether the defense of accord and satisfaction set up in the defendant's answer should not have been sustained and adjudged to preclude any recovery by the plaintiff. The material facts bearing on this question, which appear in the findings of the referee, may be summarized as follows: The plaintiff had contracted with the defendant to construct a certain railway, and, by the terms of the written contract between the parties, the defendant, among other things, undertook that, whenever its chief engineer should furnish it his certificate

that the railway had been finished, and all the conditions of the contract been fully performed, and his final estimate of the amount due the plaintiff therefor, the defendant would pay the amount of the estimate, less such payments as should have been already made. The contract provided that the estimate of the engineer should be final and conclusive between the parties.

The parties had also entered into a supplemental contract, whereby the plaintiff agreed to complete his performance of the original contract on or before June 1, 1887, and, in case of failure so to do, to allow the defendant, by way of forfeiture, the sum of $40,000.

The railroad was completed, and the chief engineer of the defendant furnished the certificate and final estimate, pursuant to the contract. The certificate was given March 3, 1888. It stated the sum earned by the plaintiff under the contract, including deductions and additions for deviations, at $3,895,798.79. At that time the defendant had made payments to the plaintiff in money and materials amounting to $3,615,306.57, and, if certain nut-locks were included, amounting to $3,626,865.20.

During the performance of the contract, the defendant supplied the plaintiff with certain nut-locks, and desired him to use them in constructing the tracks. The plaintiff insisted that the contract did not require him to use them. Thereupon it was arranged that he should use them, and the question whether they were to be used at his expense, or that of the defendant, should remain open until the completion of the railway.

The plaintiff did not complete the contract by June 1, 1887, but his delay was wholly owing to his inability to do so, by reason of the failure of the defendant to acquire certain rights of way which, by the contract, it had agreed to acquire.

Upon a matter of account outside the contract, the defendant was indebted to the plaintiff for materials bought of him, etc., in the sum of $34,598.90.

March 9, 1888, the defendant rendered to the plaintiff a statement of account, crediting the plaintiff with the sum of $3,895,-798.79, according to the engineer's estimate, and with the further sum of $34,598.90, for materials, etc., and debiting him with payments amounting to $3,626,865.20, including $9,558.63 for the nut-locks, and also debiting him with the sum of $40,000 for failure to complete the contract by June 1, 1887. As thus rendered, the account stated as the balance due plaintiff the sum of $173,532.49. Annexed to the statement was a receipt, which recited that the plaintiff had received $173,532.49 in full satisfaction of the amount due him upon the estimate, and of all claims and items of every kind, name, and nature arising from, or growing out of, the said contract, and of the construction of the said railroad. The plaintiff signed the receipt, and thereupon the defendant paid the plaintiff $173,532.49.

The referee found that the statement rendered by the defendant "contained an accurate, truthful, and undisputed account of all dealings between the said parties," except in respect to the $40,000 debited for time forfeiture, the $9,558.63 for nut-locks embraced

in the $3,626,865.20, and another small item which accrued subsequently, to which reference is unnecessary.

The referee found, as conclusions of law: (1) That at the time of signing the receipt the plaintiff was not indebted to the defendant upon the item for nut-locks; (2) that the plaintiff was not liable for the item of $40,000 debited to him for failure to complete the railroad by June 1, 1887; (3) that when it rendered the statement of account the defendant was indebted to the plaintiff in the sum of $49,558.63 in addition to the sum of $173,532.49 paid by it upon receiving the receipt; (4) that the delivery of the receipt, and the acceptance of the payment, by the plaintiff, did not constitute a valid payment or accord and satisfaction of the said sums of $9,-558.63 and $40,000, or either of them, or any part of them; and that the plaintiff was entitled to recover the sum of $49,558.63, with interest from March 9, 1888.

The assignments of error thus raise the question whether the acceptance of $173,532.49 by the plaintiff, upon a promise to receive it in full of all his demands, was a settlement and satisfaction of his demands against the defendant, which amounted to $49,558.63 more than that sum. If there was no consideration for his promise, the conclusion of the referee was correct; if there was a sufficient consideration for it, the assignments of error are good.

A promise by a creditor having a liquidated and undisputed demand against his debtor, which is wholly due and payable, to discharge the residue upon receiving payment of a part, is, according to all authorities, nudum pactum, and totally inoperative, because the debtor is under legal obligation to pay the whole demand. A demand is not a disputed demand, merely because the debtor refuses to pay or recognize it; for, if this were true, no case would ever arise for the application of the rule. It is disputed, within the meaning of the rule, only when it is so far disputable as to present a "proper case for litigation." Tuttle v. Tuttle, 12 Metc. (Mass.) 551; Zoebisch v. Von Minden, 120 N. Y. 406, 24 N. E. 795; Honeyman v. Jarvis, 79 Ill. 318. A demand is a liquidated demand when it is of such nature that its exact pecuniary amount is either ascertained or ascertainable by simple computation.

It is conceded that, as to the part of the plaintiff's demand established by the certificate of the engineer, it was a "liquidated" and "undisputed" demand against the defendant, in the sense in which these terms are used in considering the validity of a promise to accept a part payment in satisfaction of the whole demand. The other part of the plaintiff's demand, that for the materials, etc., purchased of plaintiff by defendant, was, according to the referee's finding, undisputed in fact between the parties; and, this being so, it is quite unnecessary to inquire whether it was originally one in respect to which there might have been a fair difference of opinion between the parties as to the amount due. The statement of account rendered by the defendant is evidence, as against the defendant, not only that it was an undisputed demand, but one the amount of which had been ascertained by the parties. If the amount had been ascertained, it was

a liquidated demand. As no facts appear in the findings of the referee to the contrary, it is to be concluded that this part of the plaintiff's demand was also liquidated, as well as undisputed by the defendant.

The case is not precisely one where the debtor refuses to pay the whole of an undisputed and liquidated demand, and exacts a promise from his creditor to receive part in satisfaction of the whole. Strictly, it is one where the creditor having two undisputed and liquidated demands against the debtor, and the latter, claiming to have cross demands or counter demands against the creditor, refuses to pay the creditor's demands, unless the validity of the cross demands is acknowledged, and their amount allowed to him by the creditor. By the statement of account and the receipt annexed to it, the defendant in fact took this position, and notified the plaintiff that, as a condition to paying the demands which it conceded to be due the plaintiff, the latter must allow and deduct the debited items for the nut-locks and the forfeiture. Upon this state of facts, a promise to allow the whole amount of the cross demands has no consideration to sustain it, because, in contemplation of the law, no benefit could accrue to the promisor and no injury to the promisee. The promisor derives no benefit, because he allows the whole; the promisee is not injured, because he relinquishes nothing.

The authorities are not altogether in accord upon the question whether, in order that there may exist a valid consideration for a compromise, both parties must concur in supposing the demand to be doubtful in point of right or amount, or whether it suffices if the claimant only entertains this belief, and honestly supposes that he has a valid demand. If the claimant, knowing his demand to be groundless, coerces a compromise, the compromise is uniformly declared to be without consideration. On the other hand, it is well settled that there is a sufficient consideration when both parties regard the demand as possibly capable of enforcement. In Bank v. Geary, 5 Pet. 99, the court said: "It is enough that the bank considered it a doubtful question, and that they supposed they were getting some benefit by foreclosing all inquiry on the subject, and the complainant, by precluding herself from setting up the defense, waived what she supposed might have been of some material benefit to her." See, also, Callisher v. Bischoffsheim, L. R. 5 Q. B. 549; Keefe v. Vogle, 36 Iowa, 87; Flannagan v. Kilcome, 58 N. H. 443; Clark v. Turnbull, 47 N. J. Law, 265; Lumber Co. v. Brown, 68 Vt. 239, 35 Atl. 56; Wahl v. Barnum, 116 N. Y. 87, 22 N. E. 280; McKinley v. Watkins, 13 Ill. 140. As in the present case no concession was made by the defendant, and the allowance of its demands in full was exacted as a condition of paying the demands of the plaintiff, there was no compromise; and it is immaterial that the defendant may have asserted its demands in good faith, when it appears that they were in fact and in law without foundation. We conclude that the assignments of error which have been considered are not well taken.

By signing the receipt, and acquiescing for a considerable period in the correctness of the account rendered by the defendant, the plaintiff was not precluded from recovery. An account stated is an ad-

mission that the account is correct, and, if the party to whom it is rendered omits to communicate objections to the other party within a reasonable time, an inference may be drawn that he was satisfied with it. But there is no arbitrary rule of law which renders the omission to object in a given time equivalent to an actual agreement or a consent to the correctness of the account. An account settled is stronger evidence, and requires more proof to overcome it, than a mere account stated. But the parties are never concluded, except by the statutes of limitation, from proving the incorrectness of the account, unless the case is brought within the principles of an estoppel in pais or of an obligatory agreement between them. Lockwood v. Thorne, 18 N. Y. 285; Perkins v. Hart, 11 Wheat. 237.

Other assignments of error impugn the conclusions of the referee in disallowing the demands of the defendant for the nut-locks and for the forfeiture. There are no provisions in the contract which, expressly or by implication, required the plaintiff, in constructing the railroad, to use the nut-locks, unless found in that provision by which he undertakes to "finish, in every respect, in the most substantial and workmanlike manner, all the work hereinafter specified." The referee did not find that this provision had not been complied with. Nor is there any finding or any evidential facts in the report to authorize the conclusion that the parties, at the completion of the work, had come to an understanding by which the expense of these articles was to be borne by the plaintiff. It is too plain to require discussion that, if the failure of the plaintiff to complete performance of the contract on or before June 1, 1887, was caused wholly by the default of the defendant in failing to acquire the rights of way necessary to be acquired before the work could be completed, the claim of the defendant for the $40,000 was without foundation.

The fifteenth and sixteenth assignments of error relate to that part of the recovery which proceeds upon the conversion by the defendant of certain bridge timber belonging to the plaintiff,—a cause of action which arose subsequently to the settlement between the parties of March 9, 1888. Neither of these assignments can be considered,—the first because it impugns a ruling of the referee made during the progress of the trial, and the second because the decision of a motion for a new trial is not reviewable.

We find no error in the record, and conclude that the judgment was correct.

It is therefore affirmed, with costs.