ANDERS v. CALIFORNIA STATE LIFE INS. CO. (No. 1532.)

(Court of Civil Appeals of Texas. Amarillo. May 28, 1919.)

1. EVIDENCE ⬥409, 419(20) — PAROL — RELEASE—CONSIDERATION.

Where release was the consummation of an executed contract containing no agreement on the part of the insurance company, and the statement of the consideration was in the nature of a receipt or recital of its payment, the release was not contractual as to the company, and it was permissible to add to or vary its statement of the consideration.

2. APPEAL AND ERROR ⬥843(1)—QUESTIONS UNNECESSARY TO DISPOSITION OF CASE—REVIEW.

Since ruling with reference to release will result in an affirmance, regardless of conclusions on certain other questions, it is unnecessary to consider such other questions.

3. TRIAL ⬥191(3) — INSTRUCTION ASSUMING FACTS—REFUSAL.

In suit involving validity of release given by a beneficiary and her husband in discharge of insurance company, it would have been error to have submitted issue "did the plaintiff believe and rely upon the statement made by defendant's attorney Lumpkin to the effect that the settlement she was making was a good one," etc., since it assumed that that statements therein referred to were made when the evidence was not conclusive as to such matter.

4. APPEAL AND ERROR ⬥719(7) — MATTERS NOT COMPLAINED OF—REVIEW.

There being no assignment complaining of refusal to submit a correct instruction of the issue of fraud it is unnecessary for the court on appeal to decide whether the evidence is sufficient to raise such issue.

Appeal from District Court, Wilbarger County; J. A. Nabers, Judge.

Suit by Cleo Gladys Cherry Anders against the California State Life Insurance Company. Judgment for defendant, and plaintiff appeals. Judgment set aside in part, but otherwise affirmed.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Kimbrough, Underwood & Jackson, of Amarillo, and L. P. Bonner and Harry Mason, both of Vernon, for appellant.

Veale & Lumpkin, of Amarillo, and Berry, Stokes & Morgan, of Vernon, for appellee.

BOYCE, J. The appellant, Cleo Gladys Cherry Anders, brought this suit to recover a balance claimed to be due on a life insurance policy issued by the Amarillo National Life Insurance Company, on the life of William P. Cherry, appellant's father, in which the appellant was named as beneficiary. The appellee had assumed all obligations imposed on the Amarillo Life Insurance Company by the terms of said policy. The policy was for the sum of $3,000, but contained this additional clause:

"Or, if, during the continuance of this policy * * * the death of the insured shall result directly and independently and exclusively of all other causes from bodily injuries effected solely through external, violent and accidental means, the sum payable shall be double the sum herein mentioned. However, death occurring in consequence of the insured's violation of law or indulgence in intoxicating drinks, * * * and death from homicide, are not risks assumed by the company under the above clause, and in no case shall such death be regarded as accidental."

The claim of appellant for liquidation of the policy under this clause was the bone of contention in this case. The following statement will be sufficient to an understanding of the issues presented by the present suit and the assignments of error in relation thereto on this appeal.

Said William P. Cherry died on February 3, 1916, while the policy was in force. He was either killed or burned to death, his body being found in the débris of the one-room shack in which he was last seen alive, and which burned in the early morning of said date. On the night before he and some companions had been drinking and gambling in this shack. About midnight the others left Cherry there. He was at the time intoxicated, though not to such an extent as that he was not able to walk about without help, and had just secured a fresh bottle of whisky. The shack was not his regular sleeping place, though there was a bunk in one corner of the room. Nothing was known as to the origin of the fire which destroyed the shack about 6 o'clock in the morning thereafter. Cherry's body was found under the springs which had been on the bunk in the corner of the room. There was some testimony which tended to show that the condition of the charred remains of the body was such as to indicate that the said Cherry had received a violent blow on the head, which might have caused his death, but the disposition we make of the case renders it unnecessary to make any finding as to whether the evidence is such as to have warranted the submission of the issue of homicide.

The appellant was, at the time of the death of the father, a minor, and thereafter the county courts of Potter county and Oldham county, each appointed guardians for her, and each guardian claimed the right to collect the policy. One of the guardians filed a suit on the policy in the district court of Oldham county, and the other guardian filed suit thereon in the federal court at Amarillo. The Oldham county suit was dismissed, and the guardian filing such suit became a party to the suit pending in the federal court, and claimed therein the right to act as guardian in such matter. The appellee answered in that suit, admitting liability for payment of the sum of $3,000 on the policy, which amount, less certain premium notes executed by the deceased, and payable to it, and about which there was no controversy, it tendered into court to be paid to whichever of the claimants might be determined to be entitled thereto. It contested its liability on the double indemnity feature of the contract, however, specially answering that the said Cherry's death occurred in consequence of indulgence in intoxicating drinks. While this suit was pending the appellant, who at that time had just reached the age of 14 years, married Jeff Anders, whereupon she and her husband settled with the appellee, receiving in settlement the amount which the company had tendered as due on the policy, and she, joined by her husband, executed a written release of the policy. This release recited the issuance of the policy, the death of the insured, the pendency of the suit in the federal court, and then proceeded as follows:

"Whereas, the said Cleo Gladys Cherry Anders desires to settle said suit pending in said federal court, and to accept the amount due under said policy, now, therefore, know all men by these presents, that we, Cleo Gladys Cherry Anders, joined by her husband, Jeff Anders, for and in consideration of the sum of $2,360.45, paid by the California State Life Insurance Company, receipt of which is hereby acknowledged, said sum being the face of said policy, less the premium notes and premium due said California State Life Insurance Company, do hereby cancel and release any and all claims and demands that we have against the California State Life Insurance Company, by virtue of said policy, and being the beneficiary therein."

Appellant's mother and stepfather also signed this release in approval thereof. The appellee company offered testimony on the trial of the present suit to the effect that, at the time of the settlement and execution of the release, the company agreed to, and did thereafter, pay the costs of the suit in the federal court, and also the costs of the Oldham county suit. The suit in the federal court was dismissed. Thereafter appellant

filed this suit, in which she seeks to set aside the release above referred to, and to recover the further sum of $3,000 on the policy under the double indemnity clause above quoted. She alleged that there was no consideration for the execution of the release, and further that it was secured by fraud on the part of the attorney representing the appellee in the settlement. The defendant in its answer pleaded the settlement and release already referred to, and, also, that it was not liable because the death of the said Cherry occurred in consequence of indulgence in intoxicating drinks. It further pleaded that the death of the said Cherry was the result of homicide by unknown persons.

On the trial of the case special issues were submitted to and answered by the jury as follows:

"(1) Did Lumpkin (the attorney representing appellee in the settlement) agree with the plaintiff and her husband at the time the release testified about was executed, on the 28th day of October, 1916, that he would, or that the company would, as a part of the consideration to the execution of said release, pay the court costs?" Ans. "Yes." "(2) If your answer is 'yes' to the last question, then say whether or not he did thereafter pay any such costs." Ans. "Yes." "(3) Was Cherry drunk at the time he was burned?" Ans. "We believe he was drunk." "(4) If you answer 'yes' to the last question, then say whether or not the said Cherry's death occurred in consequence of indulgence in intoxicating drinks, if you find there was such indulgence?" Ans. "We believe it did." "(5) Should you find that said Cherry met his death either because of his intoxicated condition, if you find he was intoxicated, or because he was killed by some one, then answer this question by saying 'We so find'; and if you do not so find, then answer this question by saying 'We do not so find.'" Ans. "We so find."

The objections to the consideration of the first assignment are well taken, but practically the same propositions as to the merits of the cause are presented under the fourth assignment, which is entitled to consideration. Under this assignment the appellant contends that the judgment is contrary to the law and the evidence, because (1) the payment by appellee of the amount admitted to be payable on the policy was not sufficient consideration for the release as to the disputed portion thereof; (2) the evidence offered, to the effect that it was agreed as part of the consideration for the release that the company would pay the court costs in the federal court and in the Oldham county suit, was incompetent as varying the terms of the written release and could not form the basis of a finding of a consideration for such release; (3) the evidence was conclusive that Cherry was burned to death, and there was not sufficient evidence to present an issue as to whether his death was the result of drinking or of homicide.

We have some doubt as to the first proposition so presented by the appellant. If the policy could be said to be liquidated to the extent of $3,000 and unliquidated as to the balance of the claim, so that appellant would be entitled to the immediate payment of the straight insurance and the right to litigate as to the balance, there would seem to be much strength in this position. But the policy is payable as a whole. There was due either $3,000 or $6,000 thereon, and there was a bona fide dispute as to whether the larger amount was due. When appellant filed suit for the $6,000 and appellee tendered the $3,000 into court we know of no procedure by which the $3,000 would be available to appellant's use until the termination of the litigation. In the event she did not prevail in her contention for the double indemnity she would get no interest on the $3,000 deposited in the registry of the court, and would be taxed with the costs of the suit. We are rather inclined to the opinion that the immediate payment of the $3,000 was a sufficient consideration for the release of the claim on the policy. Bergman Produce Co. v. Brown, 172 S. W. 557; McCormick v. City of St. Louis, 166 Mo. 315, 65 S. W. 1044; Tanner v. Merrill, 108 Mich. 58, 65 N. W. 664, 31 L. R. A. 171, 62 Am. St. Rep. 687. The latter case directly sustains the sufficiency of the consideration under the circumstances stated, but other authorities (C., M. & S. P. Ry. Co. v. Clarke, 92 Fed. 968, 35 C. C. A. 120) announce that the decision in this case was not well reasoned and is not supported by the best authorities. We will not ourselves, at this time, attempt a review of the authorities or announce a conclusion as to the question, as our holding on the second proposition is sufficient to a disposition of this phase of the appeal.

[1] We think the parol evidence as to the agreement to pay the costs of the two suits was competent. The release contained no agreement on the part of the insurance company. It was the consummation of an executed contract and the statement of the consideration for the release was in the nature of a receipt or recital of its payment. The release was not, therefore, contractual as to the appellee, and under such circumstances it was permissible to add to or vary its statement of the consideration. Matheson v. C. B. Livestock Co., 176 S. W. 734; Womack v. Wamble, 7 Tex. Civ. App. 273, 27 S. W. 154; Moorehead v. Hering, 53 Tex. Civ. App. 605, 116 S. W. 164; Uecker v. Zuercher, 54 Tex. Civ. App. 289, 118 S. W. 149. The case of Rapid Transit Co. v. Smith, 98 Tex. 553, 86 S. W. 322, more nearly supports appellant's proposition than any case to which we have been referred. The release in that case recited the payment of a certain sum in cash and "the assumption of Dr. Gauldin's bill," and it was held by the

Supreme Court that the release "being a written contract, containing the recital of the payment of one sum and the promise to pay another as a consideration, was not subject to be varied or contradicted by parol evidence." We think the assumption clause of that contract distinguishes the release from the one we are considering. Such clause made that release contractual as to the railway company. An extended review of the authorities on this subject will be found in an opinion written by Judge Hall of this court, in the case of Matheson v. C. B. Livestock Company, supra, and we refer to the opinion in that case in lieu of a further discussion of the question. We conclude, therefore, that the answer of the jury to the first issue submitted, the pleading and evidence being sufficient to present the issue, is alone sufficient to support the judgment in favor of the appellee.

[2] It is not necessary to consider other questions except those presented by the sixth and seventh assignments, as the ruling just announced would result in an affirmance of the case no matter what our conclusions on such other questions might be.

[3, 4] The sixth assignment complains of te refusal of the court to submit the following requested issue:

"Did the plaintiff believe and rely upon the statement made by defendant's attorney Lumpkin to the effect that the settlement she was making was a good one; that he was paying her all that she could recover, and if the suit continued she might not get anything; that he had plenty of proof that the deceased was drunk at the time of his death and that drunkenness killed any insurance policy?"

It would have been error to have submitted this issue in this language, because it is assumed that the statements therein referred to were made, when the evidence is by no means conclusive as to such matter. The assignment must therefore, for this reason, if for no other, be overruled. There is no assignment complaining of the action of the court in refusing to submit a correct instruction on the issue of fraud, and it is not necessary for us to decide whether the evidence is sufficient to raise such issue. Equitable Life Association Co. v. Maverick, 78 S. W. 560; E. P. & S. W. Ry. Co. v. Harry, 37 Tex. Civ. App. 90, 83 S. W. 737; Langhman v. Sun Pipe Line Co., 52 Tex. Civ. App. 485, 114 S. W. 45. We will add, however, that in our opinion the evidence was not sufficient to require a submission of the issue of fraud.

The court was in error in attempting to adjudge that the attorney, W. H. Kimbrough, should pay one-third of the costs of this appeal. That part of the judgment will be set aside, and the judgment will be otherwise affirmed.